STATE of Utah, in the interest of
A.R. and C.P., persons under
eighteen years of age.

C.R., Appellant,

v.

STATE of Utah, Appellee.

No. 960239–CA.

Court of Appeals of Utah.

April 3, 1997.

Rehearing Denied June 6, 1997.

Julie McPherson, Salt Lake City, for Appellant.

Jan Graham and Annina M. Mitchell, Salt Lake City, for Appellee.

Karen Flynn, Salt Lake City, Guardian Ad Litem.

Before DAVIS, GREENWOOD and ORME, JJ.

DAVIS, Presiding Judge:

Appellant challenges the trial court's determination that C.P. is a neglected child as defined by Utah Code Ann. § 78–3a–2(16) (Supp.1995) (repealed 1996).[1] Specifically, appellant argues that the trial court erred in not excluding evidence obtained during a search of her home. We affirm.

## BACKGROUND

At approximately 8:00 p.m. on January 2, 1996, Third District Juvenile Court Probation Officer Steven Ha, along with youth and family specialist Mr. Coddel, went on a home visit to see appellant's eldest child, M.R., a juvenile probationer under Ha's supervision. On the way, Ha and Coddel stopped at a 7–11 convenience store in appellant's neighborhood. While there, they happened upon R.R., M.R.'s father and appellant's ex-husband. R.R. had legal custody of M.R. R.R. told Ha that M.R. had run away from home and noted that he might be staying with appellant. R.R. also stated that he believed A.R. and C.P., both of whom lived with appellant, were being neglected while in her care.

R.R. then took Ha and Coddel to appellant's home. On their arrival at approximately 8:30 p.m., the trio saw A.R. and C.P., then ages nine and seven respectively, riding their bikes on the street in front of appellant's home. R.R. asked the children where M.R. was, and the children responded that he had run away. Ha then independently asked each child if appellant was home. Responding in the negative, A.R. told Ha that they had not seen appellant since before they went to school that morning; C.P. said they had not seen appellant for two days. Because the children told him they did not have a babysitter, Ha became concerned about

their possible neglect and contacted the Salt Lake Police Department (SLPD).

Responding to investigate the child neglect complaint, SLPD Officer Matt Larsen arrived at appellant's home at 9:00 p.m. A.R. told Larsen that she and C.P. were being tended by their mother's boyfriend, Randy Knott. However, A.R. added that Knott had been in and out of the house several times during the day, and that she did not know where he was at the time. Both A.R. and C.P. told Larsen they did not know where their mother was, and that she did not have a job.[2] C.P. mentioned that Knott could possibly be visiting a neighbor across the street. Larsen's testimony as to the events following his interview with the children was as follows:

> I went to [appellant's] house, as I recall. I knocked on the door and there wasn't anyone there that I could determine. The front door was open and the screen door was shut. I entered the home to try to determine if there was anyone there.... I entered the house to have a look around and see what the living conditions were like, to see if anyone was present to watch the children. I didn't find anybody in the house.... As I entered one of the bedrooms, I noticed as I turned the corner there was a headboard to the bed which was like a bookshelf, and on the shelf there was as I recall a glass pipe with residue. There was also a wooden bowl-type pipe.... [The] glass pipe ... had dirt residue inside the pipe and there was also evidence of carbon residue on the outside of the pipe that was from a heat source.... [I]t was a pipe used for smoking heroine or cocaine.... [T]he pipe had a residue inside the bowl area that had a smell which was similar to what I have smelled in other pipes used for smoking marijuana. It also had a compartment inside the pipe where there was a loose plant material stored that resembled in

1. Utah Code Ann. § 78–3a–2(16) (Supp.1995) was repealed in 1996, *see* Juvenile Court Recodification Act, ch. 1, § 93, 1996 Utah Laws 3, 49. The current version is codified at Utah Code Ann. § 78–3a–103(1)(q)(i) (1996).

2. Appellant testified that at 3:00 p.m., before the children arrived home from school, she was phoned by S.O.S. Temporaries to do janitorial work at a furniture store in Bountiful, Utah. She contends that she arranged for Knott to watch the children. There was no other testimony to corroborate appellant's story.

appearance and odor to be unburned marijuana.

Larsen also testified that appellant's house was unkempt, and the children identified the bedroom in which the drug paraphernalia was found as appellant's room. While in appellant's house, Larsen did not open and/or search any drawers or closets.

After visually inspecting the home and finding no adults present, Larsen had a Division of Child and Family Services (DCFS) worker and a SLPD youth detective sent to the house. A SLPD canine unit also arrived at the scene.[3] During the canine officer's search of the home, numerous adult sexual devices were discovered in a drawer in appellant's bedroom; the location of the devices was readily accessible to the children. At one time, as many as three marked police vehicles were parked in front of appellant's house, and a total of six police vehicles were present. Nonetheless, despite the presence of several marked police cars and many uniformed police officers at appellant's house, at no time while Ha and Larsen were at appellant's house from 8:30 to 11:00 p.m. did anyone claim responsibility for the children.

Based on the drug paraphernalia, the accessibility of the sexual devices, and the children's lack of supervision, DCFS placed the children in shelter care. Appellee's Verified Petition filed on behalf of A.R. and C.P. alleged that the children were dependent and/or neglected as defined in Utah Code Ann. §§ 78–3a–2(9), (16) (Supp.1995) (repealed 1996). In light of the testimony adduced at the adjudication hearing, the juvenile court concluded that C.P. "is a neglected child in that the child lacked proper parental care by reason of the fault or habits of the parents, guardians, or custodians, and/or the child's parents, guardians, or custodians failed or refused to provide proper or necessary care for his health, safety, morals, or well-being." See Utah Code Ann. § 78–3a–2(16) (Supp.1995) (repealed 1996).

## ISSUES AND STANDARD OF REVIEW

■ Appellant raises two challenges to the trial court's Findings of Fact, Conclusions of

Law and Order, in which C.P. was adjudged a neglected child: (1) whether the trial court erred in ruling that the state and federal constitutional protections against unreasonable searches and seizures are not applicable in child abuse, neglect, and dependency proceedings; and (2) whether, pursuant to state and federal search and seizure law, the search of appellant's home was unlawful, and accordingly, whether the evidence seized from appellant's home should have been excluded.

"Whether police action implicates a fundamental violation of [appellant's] rights is a question of law, which we independently review for correctness." State v. Simmons, 866 P.2d 614, 618 (Utah.Ct.App.1993).

## ANALYSIS

■ On appeal, appellant challenges the trial court's interpretation of both state and federal search and seizure law. However, at the hearing on her motion to suppress, appellant failed to adequately address the state constitutional search and seizure provision[4] and offered no state constitutional analysis in her memorandum supporting her motion to suppress. This court has previously declared that "'the proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not ... for the first time on appeal.'" State v. Spurgeon, 904 P.2d 220, 224 n. 2 (Utah.Ct.App.1995) (quoting State v. Bobo, 803 P.2d 1268, 1273 (Utah.Ct.App. 1990)). "Consequently, '[b]ecause appellant[ ] failed to develop any meaningful state constitutional argument below, our analysis must proceed solely under federal constitutional law.'" Id. (quoting State v. Dudley, 847 P.2d 424, 426 (Utah.Ct.App.1993)).

### I. Applicability of Fourth Amendment to Civil Child Protection Proceedings

Appellant contends that the United States Constitution's protection against unreasonable searches and seizures applies in civil

---

3. The record fails to clarify why the canine unit was summoned.

4. See Utah Const. art. I, § 14.

child abuse, neglect, and dependency proceedings. During the hearing on appellant's motion to suppress, the trial court presupposed the applicability of the Fourth Amendment when it determined that the exclusionary rule does not apply in civil abuse, neglect, and dependency proceedings. Moreover, in its brief, appellee noted that it

> does not dispute, and did not dispute in the juvenile court, that the Fourth Amendment prohibits unreasonable searches by civil authorities other than criminal law enforcement officers. However, that has never been a legal issue in the instant case, in which Appellant challenged the legality of the warrantless entry into her house by [Larsen], a police officer. Although trial counsel contended in his memorandum in support of Appellant's motion to suppress that [DCFS] workers are subject to the Fourth Amendment, [appellee] did not argue otherwise. Moreover, there was no evidence presented to the juvenile court that any civil governmental authority, such as a [DCFS] caseworker, had conducted or participated in any entry or search of [appellant's] house.[5]

Nonetheless, because the Fourth Amendment's applicability necessarily precedes consideration of the exclusionary rule, we reach the issue on appeal, even though appellant failed to clearly articulate the issue before the trial court. *Cf. Sims v. State Tax Comm'n*, 841 P.2d 6, 7–8 (Utah 1992) (refusing to presume without analysis the unconstitutionality of roadblock that led to vehicle search and subsequent seizure of kilogram of cocaine).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable searches and seizures*, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the person or things to be seized.

U.S. Const. amend. IV (emphasis added).

The Supreme Court has held that the Fourth Amendment's protections apply to civil proceedings[6] and to searches by all state actors. *See O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987) (" '[I]t would be "anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." ' " (citations omitted)); *New Jersey v. T.L.O.*, 469 U.S. 325, 334–35, 105 S.Ct. 733, 738, 83 L.Ed.2d 720 (1985) ("It is now beyond dispute that 'the Federal Constitution, by virtue of the Fourteenth Amendment, prohibits unreasonable searches and seizures by state officers.' " (citations omitted)); *see also Soldal v. Cook County, Ill.*, 506 U.S. 56, 66–67, 113 S.Ct. 538, 546, 121 L.Ed.2d 450 (1992) (recognizing Seventh Circuit Court of Appeals' acknowledgment that "the [Fourth] Amendment's protection applies in the civil context"). In *T.L.O.*, the Court noted that it had "never limited the [Fourth] Amendment's prohibition on unreasonable searches and seizures to operations conducted by the police. Rather, the Court has long spoken of the Fourth Amendment's strictures as restraints imposed upon 'governmental action'—that is, 'upon the activities of sovereign authority.' " 469 U.S. at 335, 105 S.Ct. at 739 (quoting *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921)).

There is no basis for holding that the Fourth Amendment's protections are inapplicable to searches conducted by state actors in civil child protection proceedings which have the potential to substantially affect the interests of parents. Thus, the Fourth Amendment's prohibition on unreasonable searches and seizures applies whenever an investigator, be it a police officer, a DCFS employee, or any other agent of the state, responds to an alleged instance of child abuse, neglect, or dependency. *See In re*

---

**5.** At oral argument, appellee again conceded the applicability of the Fourth Amendment.

**6.** Utah Code Ann. § 78–3a–515(1) (1996) clearly states that child protection proceedings are civil in nature.

*Robert P.,* 61 Cal.App.3d 310, 132 Cal.Rptr. 5, 11–12 (1976) (presupposing Fourth Amendment applicability in civil child protective proceeding); *New Jersey Div. of Youth & Family Servs. v. B.W. & V.W.,* 165 N.J.Super. 492, 398 A.2d 611, 613 (N.J.Juv. & Dom. Rel.Ct.1978) ("It is also clear that the Fourth Amendment of the United States Constitution ... protect[s parents] from invasion of their right to privacy within their home."); *In re Diane P.,* 110 A.D.2d 354, 494 N.Y.S.2d 881, 883–85 (1985) (presupposing applicability of Fourth Amendment in child protective proceedings); *State v. Boggess,* 115 Wis.2d 443, 340 N.W.2d 516, 521 n. 9 (1983) ("Although a social worker initiated the intrusion in this case, the [F]ourth [A]mendment is still implicated."). Accordingly, even though Larsen was apparently acting as would a DCFS child protection unit investigator responding to a child abuse report, and even though there is no allegation in the record that Larsen entered appellant's home for any criminal investigative purpose, but rather entered solely to "see what the living conditions were like, to see if anyone was present to watch the children," we hold that the Fourth Amendment's protection is nonetheless applicable.

### II. Reasonableness Requirement

■ Given the applicability of the Fourth Amendment, we next consider appellant's contention that Larsen's search of appellant's home violated the Fourth Amendment. At the hearing on appellant's suppression motion, the trial court did not specifically address this issue, deciding the case on the applicability of the exclusionary rule. However, we do not presume the unconstitutionality of Larsen's search in order to reach the exclusionary rule issue. *See Sims,* 841 P.2d at 7–8.

■ Addressing the Fourth Amendment's protection against "unreasonable" searches and seizures, the Supreme Court has held, " 'what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.' " *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968) (quoting *Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d

1669 (1960)); *see also Wyman v. James,* 400 U.S. 309, 318, 91 S.Ct. 381, 386, 27 L.Ed.2d 408 (1971); *State v. Lopez,* 873 P.2d 1127, 1131 (Utah 1994); *State v. Genovesi,* 909 P.2d 916, 921 (Utah.Ct.App.1995). Thus, a state actor's search must be "unreasonable" before the Fourth Amendment comes into play. In *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Court stated: "Because there can be no fixed formula, we are admittedly met with 'recurring questions of the reasonableness of searches,' but less is not to be expected when dealing with a Constitution, and, at any rate, '[r]easonableness is in the first instance for the [trial court] to determine.' " *Id.* at 653, 81 S.Ct. at 1690 (alteration in original) (quoting *United States v. Rabinowitz,* 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653 (1950)).

■ Since *Mapp,* the Court has determined that " 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' " *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973) (quoting *Camara v. Municipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967)). As explained in *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948),

> The right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

Accordingly, warrantless searches are per se unreasonable within the meaning of the Fourth Amendment. *See Camara,* 387 U.S. at 528–29, 87 S.Ct. at 1731; *see also Boggess,* 340 N.W.2d at 520. Thus, we begin with the presumption that Larsen's search of appellant's home, conducted without a warrant, was unreasonable under the Fourth Amendment.

■ In *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879, the Court established a two-pronged

reasonableness analysis: "[I]n determining whether [a] seizure and search [is] 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Moreover, the Supreme Court has recognized that "[t]here are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with." *Johnson*, 333 U.S. at 14–15, 68 S.Ct. at 369; *see also Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958) ("The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn.").[7]

On the facts before us it cannot be said that Larsen's search of appellant's home was either justified at its inception and limited in scope to its initial justification, or that it squarely rests upon one of the "jealously and carefully drawn" exceptions to the Fourth Amendment's warrant requirement: Larsen responded to a child neglect dispatch. Upon his arrival at appellant's house, Larsen was told that (1) appellant was not at home; (2) A.R. and C.P. had not seen appellant for several hours, and possibly for as long as two days; (3) the children were possibly being tended by appellant's boyfriend, and no one knew where he was; and (4) no one had come forward to claim responsibility for the children since Ha and Coddel arrived, approximately one-half hour to an hour before Larsen got to the scene. Based on this knowledge alone, DCFS had reasonable grounds to take the children into custody, *see* Utah Code Ann. § 78–3a–2(16)(a) (Supp. 1995) (repealed 1996) and § 78–3a–301 (1996). However, Larsen had no facts before him justifying a warrantless search of appellant's home—the children were outside of the house and in no immediate danger, and DCFS could have taken custody of the chil-

dren. Also, once the canine unit entered the home, the search obviously far exceeded the scope of Larsen's reason for entering the home. Finally, there were no exigent circumstances compelling an immediate entry into the house. Accordingly, Larsen's search was unreasonable within the meaning of the Fourth Amendment.

### III. Exclusionary Rule

■ Because Larsen's search violated the Fourth Amendment, we lastly consider the applicability of the exclusionary rule in civil child protection proceedings. The remedy for a violation of the Fourth Amendment may be suppression of the evidence obtained during the unconstitutional search under the exclusionary rule. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ In *Mapp*, the Supreme Court held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Id.* at 655, 81 S.Ct. at 1691. In doing so, the Court overruled its prior decision in *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), which held "that in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure." *Id.* at 33, 69 S.Ct. at 1364. In rendering its decision, the *Mapp* Court noted that the purpose of the exclusionary rule " 'is to deter [police misconduct]—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' " *Mapp*, 367 U.S. at 656, 81 S.Ct. at 1692 (quoting *Elkins*, 364 U.S. at 217, 80 S.Ct. at 1444); *see also United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984) ("[T]he exclusionary rule is designed to deter police misconduct."); *Terry*, 392 U.S. at 12, 88 S.Ct. at 1875 (stating "major thrust" of exclusionary rule "is a deterrent one[;] ... it is the only

---

7. Among the limited recognized exceptions to the warrant requirement are the good faith exception, *see United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); exigent or emergency circumstances exception, *see Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), *see also Boggess*, 340 N.W.2d at 521 (discussing emergency exception under Wisconsin Constitution in context of child abuse investigation); and investigative stop-and-frisk searches, *see Terry*, 392 U.S. at 20, 88 S.Ct. at 1879.

effective deterrent to police misconduct in the criminal context"). "But even assuming that the rule effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Leon,* 468 U.S. at 918–19, 104 S.Ct. at 3418. An observation of the *Terry* Court is particularly instructive as to the exclusionary rule's application in child protection proceedings: The exclusionary rule "is powerless to deter invasions of constitutionally guaranteed rights where the police either have no interest in prosecuting or are willing to forgo successful prosecution in the interest of serving some other goal." 392 U.S. at 14, 88 S.Ct. at 1876.

Mirroring *Terry*'s reasoning, if not its language, several courts considering the exclusionary rule's applicability to civil child protection proceedings have determined that the rule has no efficacy in this context. For instance, in *In re Robert P.,* the California First District Court of Appeal concluded:

> The application of the exclusionary rule, primarily in criminal cases, may be necessary to insure that the law enforcement officers observe the proscriptions of the Fourth Amendment. However, we are mindful that just dispositions are frequently thwarted thereby and we see no necessity to extend the rule to the relatively few violations in child custody actions which are not criminal in nature. The possibility that such an extension might result in the suffering or deprivation of innocent children is too high a price to pay for any slight additional deterrent effect.

132 Cal.Rptr. at 12. Building on the wisdom of *Terry* and *Robert P.,* the New York Supreme Court added the following:

> On balance, the State's interest in protecting abused children and the unthinkable consequences to the children if they are left in the hands of abusive parents far outweigh the potential consequences to the parents.
>
> Of course, child abuse is also a crime and there exists the possibility of a parallel or subsequent criminal prosecution based on the same underlying acts. This is not relevant to the instant inquiry, for such a criminal prosecution is a completely independent proceeding. The use of illegally seized evidence in a child protective proceeding would have no impact upon a related criminal prosecution because normal application of the exclusionary rule would in any event preclude use of that evidence in the criminal prosecution. Thus, the potential for related criminal charges does not serve as a justification for application of the exclusionary rule in a child protective proceeding.
>
> In short, we conclude that because a child protective proceeding itself is not punitive in nature and the deterrent effect of the exclusionary rule will be adequately served by precluding use of the evidence in any related criminal proceeding, the State's interest in protecting its children mandates the admissibility of relevant evidence seized during an illegal search.

*In re Diane P.,* 494 N.Y.S.2d at 885 (citations omitted). We embrace the proposition that [t]he use of illegally seized evidence in a child protective proceeding would have no impact upon a related criminal prosecution because normal application of the exclusionary rule would in any event preclude use of that evidence in the criminal prosecution ... and the deterrent effect of the exclusionary rule will be adequately served by precluding use of the evidence in any related criminal proceeding,

*id.,* and emphasize that our conclusion today in no way affects the exclusionary rule's applicability in prior, concurrent, or subsequent criminal proceedings based on the events or evidence at issue in a civil child protection proceeding. Additionally, we emphasize that we do not condone illegal searches in child protection cases and expect all government agents to comply with the Fourth Amendment.

In determining that the exclusionary rule is inapplicable in this case, and concurrently denying appellant's motion to suppress, the trial court noted that "the primary interest of [the juvenile court in a neglect proceeding] at this point is to protect children and what's in their best interest.... The primary pur-

pose of the [Juvenile Court Act] is to protect children, not to necessarily to [sic] deter unlawful behavior, but to protect children in their best interests, so I am going to deny your motion at this time and the evidence comes [in]."

We agree with the wisdom espoused by the Supreme Court in *Terry*, repeated in the decisions cited herein, and noted by the trial court that holds the exclusionary rule is inapplicable to civil child protection proceedings. Accordingly, the trial court correctly ruled on the exclusionary rule's applicability and its determination is therefore affirmed.

GREENWOOD, J., concurs.

ORME, J., concurs in the result.