982 P.2d 73 (1999)
1999 UT 43
STATE of Utah, in the interest of A.R. and C.P., persons under eighteen years of age, Plaintiff, Respondent, And Cross-Petitioner,
v.
C.R., Defendant, Petitioner, And Cross-Respondent.
Nos. 970321, 970322.
Supreme Court of Utah.
April 30, 1999.
Rehearing Denied July 22, 1999.
*74 Jan Graham, Att'y Gen., Carol Clawson, Solicitor Gen., Annina M. Mitchell, Asst. Att'y Gen., Salt Lake City, for plaintiff.
Karen Flynn, Martha Pierce, Salt Lake City, for the children.
John E. Laherty, Salt Lake city, for defendant.

On Certiorari to the Utah Court of Appeals
STEWART, Justice:
¶ 1 This case is before us on a writ of certiorari to the Court of Appeals. C.R., the petitioner, challenges a Court of Appeals' decision affirming a juvenile court ruling awarding custody of petitioner's minor son, C.P., to C.P.'s natural father, based on a finding that petitioner had neglected C.P.
¶ 2 Police officers found two of petitioner's children unattended outside their home on a winter evening and then discovered drug paraphernalia and sexual paraphernalia during warrantless searches of the petitioner's house. Petitioner filed a motion in juvenile court to suppress the evidence discovered during the warrantless searches. The court ruled that the Fourth Amendment exclusionary rule did not apply to civil child protection proceedings and denied the motion. On appeal, the Court of Appeals held that the search of petitioner's house violated the Fourth Amendment; however, it ruled that the exclusionary rule is inapplicable to child protection proceedings and therefore affirmed the juvenile court's order. See State in re A.R. & C.P., 937 P.2d 1037, 1042, 1044 (Utah Ct.App.1997). C.R. petitioned for certiorari, and the State cross-petitioned on the issue of the Court of Appeals' ruling that the search violated the Fourth Amendment. We granted both petitions.

I. BACKGROUND AND COURSE OF PROCEEDINGS
¶ 3 Petitioner C.R. is the natural mother of three children involved in this case: M.R., A.R., and C.P. In early 1996, A.R. and C.P. were living with petitioner. M.R. was not living with petitioner, but M.R.'s probation officer, Steven Ha, believed that M.R. might be visiting petitioner. On the evening of January 2, 1996, Ha, accompanied by M.R.'s natural father, R.R., and a social worker, went to petitioner's house.[1] When Ha arrived at petitioner's house, about 8:30 p.m., he saw A.R. and C.P., then ages nine and seven, respectively, riding their bicycles on the street in front of the house. When questioned about the whereabouts of petitioner, A.R. stated she had last seen her mother that morning before school, and C.P. said he had not seen his mother for "a couple of days."[2] Because it appeared that no one was supervising the young children, Ha contacted the Salt Lake Police Department.
¶ 4 Officer Matt Larsen arrived at petitioner's house around 9:00 p.m. A.R. told Larsen that her mother's boyfriend was watching them and had been in and out of the house that day, but A.R. did not know where he was at that time. C.P. stated that his mother's boyfriend "might be across the street." Larsen approached petitioner's house and noticed that "the front door was open and the screen door was shut." Larsen knocked on the door and, when no one answered, entered the house "to try and determine if there was anyone there, ... to have a look around and see what the living conditions were like, to see if anyone was present to watch the children." Larsen looked in a bedroom in the house and saw a glass pipe and a wood pipe on a shelf inset in the bed's headboard. Based on his experience and training, Larsen recognized the pipes as the type used to smoke heroin, cocaine, or marijuana. Cf. State v. Dorsey, 731 P.2d 1085, 1088 (Utah 1986). The pipes had apparently been used and contained residues. Larsen *75 completed a cursory search of the house and found no one inside. He did not open any closets, drawers, or other "closed areas" of the house.
¶ 5 Larsen left the house and reported what he had found. A drug canine unit arrived and conducted a more comprehensive warrantless search. Various "sexual devices" were found in petitioner's bedroom drawer, but no other contraband was located. For approximately two hours there were at least three police vehicles parked outside the house, and, at one point, there were six vehicles, some marked and some unmarked. Some police officers remained on the scene until at least 11 p.m., but no one ever approached to identify himself or herself as an adult responsible for watching the children.[3]
¶ 6 The Division of Child and Family Services ("DFCS") placed the children in shelter care pursuant to Utah Code Ann. § 78-3a-301 (Supp.1995). On January 5, the State filed a verified petition alleging that A.R. and C.P. were neglected as defined in Utah Code Ann. § 78-3a-2(16) (Supp.1995) (repealed 1996).[4] In support of its petition, the State alleged that petitioner had left the children home unattended for an unreasonable amount of time and that a search of the house revealed drug paraphernalia and sexual devices in areas readily accessible to the children. Although the State's petition originally alleged that petitioner had neglected both A.R. and C.P., it was revealed at the outset of the juvenile court hearing that petitioner did not have custody of A.R. and that A.R.'s father, who did have legal custody, had agreed to a voluntary transfer of custody to A.R.'s grandparents. Consequently, the hearing proceeded on the sole issue of custody of C.P.
¶ 7 Petitioner moved to suppress all evidence discovered during the warrantless searches of her house. The juvenile court denied the motion. The court held that civil child protection proceedings were neither criminal nor quasi-criminal in nature and therefore the Fourth Amendment exclusionary rule did not apply.
¶ 8 At the conclusion of the hearing, the juvenile court ruled that
based upon the testimony of the witnesses and other evidence presented ... [, C.P.] is a neglected child in that the child lacked proper parental care by reason of the faults or habits of the parents, guardians or custodians, and/or the child's parent, guardians, or custodians failed or refused to provide necessary care for his health, safety, morals, or well-being.
The juvenile court stated that its decision was based primarily on the fact that petitioner had left the children alone for an extended period of time and failed to arrange for a responsible adult to watch them. With respect to the boyfriend, who petitioner claimed was watching the children, the court stated:
[The children] haven't seen Mom since the morning, yet I don't know what anyone would expect the police or Mr. Ha or anyone to believe, especially when they go into the home and they see drug paraphernalia and drugs out in plain view, and the children basically not knowing where their mother is at. Certainly [the boyfriend] probably should have shown some responsibility, but he didn't, and the bottom line is the neglect doesn't necessarily go to you by not being there, but the neglect goes to you for allowing somebody like [the boyfriend] to be there allegedly or purportedly to care for these children.
¶ 9 Petitioner appealed. The Court of Appeals stated that the warrantless searches of petitioner's house violated the Fourth Amendment to the United States Constitution as applied to officers of the state of Utah by the Fourteenth Amendment.[5]See State *76 in re A.R. & C.P., 937 P.2d 1037, 1042 (Utah Ct.App.1997). The court ruled that "Larsen had no facts before him justifying a warrantless search of [petitioner's] home  the children were outside of the house and in no immediate danger, and DCFS could have taken custody of the children." Id. Nevertheless, the Court of Appeals affirmed the juvenile court's ruling that the exclusionary rule does not apply to child protection proceedings. Relying on Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and Terry v. Ohio, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court observed that the primary function of the exclusionary rule is to deter police misconduct in the context of criminal investigations. The Court of Appeals cited several cases holding that motions to suppress evidence in civil child protection proceedings were not appropriate. See, e.g., In re Robert P., 61 Cal.App.3d 310, 132 Cal.Rptr. 5, 12 (1976); In re Diane P., 110 A.D.2d 354, 494 N.Y.S.2d 881, 885 (N.Y.App.Div.1985). Based on such cases, the court held that the exclusionary rule should not apply because the deterrent effect of excluding improperly obtained evidence is not furthered in civil proceedings intended to protect children. See State in re A.R. & C.P., 937 P.2d at 1043-44.

II. DISCUSSION
¶ 10 The Court of Appeals' decision regarding the applicability of the exclusionary rule is a legal issue. We therefore give no deference to the court's ruling. See State v. Pena, 869 P.2d 932, 935-36 (Utah 1994); see also Sims v. State Tax Comm'n, 841 P.2d 6, 10-11 (Utah 1992). The State filed a cross-petition challenging the Court of Appeals' ruling that the warrantless searches violated the Fourth Amendment. The Court of Appeals' decision regarding the Fourth Amendment reasonableness of the warrantless entry is also reviewed nondeferentially for correctness. See State v. Anderson, 910 P.2d 1229, 1232 (Utah 1996); Pena, 869 P.2d at 939.
¶ 11 Petitioner attacks the Court of Appeals' ruling that the exclusionary rule does not apply to child protection proceedings. She argues that those proceedings involve government intrusion upon a fundamental constitutional right, namely the right to parent one's child.
¶ 12 In its cross-petition, the State argues that the Court of Appeals incorrectly held that the initial search by Officer Larsen constituted a Fourth Amendment violation. In making this argument, the State asserts that the Court of Appeals mistakenly merged two separate warrantless searches into a single event. With respect to the initial search by Officer Larsen, in which he conducted a spot check of the various rooms in the house and discovered drug paraphernalia in plain view, the State argues that his actions were reasonable under the "emergency" or "community caretaker" doctrine. With respect to the second warrantless search, in which a canine unit conducted a more comprehensive examination and discovered sexual paraphernalia in a closed drawer, the State concedes that the police violated the Fourth Amendment.[6]
*77 ¶ 13 We first examine whether the exclusionary rule applies to child protection proceedings. Only if the rule does apply in this context is it necessary to determine whether the warrantless searches constituted a Fourth Amendment violation.
¶ 14 The question C.R. presents is whether the Court of Appeals erred in affirming the juvenile court's refusal to suppress the evidence found during the warrantless searches of C.R.'s house. The impact of our decision on this issue is necessarily much broader than a ruling on the reasonability, under the Fourth Amendment, of the warrantless searches in this case, for we deal with the question of admissibility of contested evidence in any child protection proceeding, not just the one at issue in this case. No state constitutional arguments have been raised. We therefore limit our discussion to the exclusionary rule mandated by the United States Constitution.
¶ 15 In Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Supreme Court first applied the exclusionary rule to a state criminal proceeding by holding that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." Nevertheless, the rule is a "judicially created remedy designed to safeguard against future violations of Fourth Amendment rights," Arizona v. Evans, 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), and does not constitute a personal constitutional right. See Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). Hence, the exclusionary rule is not a universally applicable evidentiary mandate. The determination of whether the rule applies depends upon the nature of the proceeding rather than the circumstances under which the evidence was collected. It is undisputed that, if this case were a criminal prosecution, any evidence obtained in the canine search of petitioner's house would be inadmissible at trial. See Mapp, 367 U.S. at 655, 81 S.Ct. 1684. We face here a wholly different context  that of a civil child protection proceeding.
¶ 16 A number of Supreme Court cases dealing with the applicability of the exclusionary rule have addressed important distinctions between proceedings that potentially apply criminal penalties and those that do not. The leading case, United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), dealt with the question of whether the Fourth Amendment exclusionary rule was applicable to criminal grand jury proceedings. The Court began with a presumption that the exclusionary rule was to have limited application depending upon the specific policy dictates necessitating its implementation. The Court stated that "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." Id. at 348, 94 S.Ct. 613. The remedial objective served "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." Id. at 347, 94 S.Ct. 613. Weighed against this purpose is the loss of "concededly relevant and reliable evidence," which may hamper "the enforcement of admittedly valid laws." United States v. Janis, 428 U.S. 433, 447, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). "[T]he need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." Calandra, 414 U.S. at 348, 94 S.Ct. 613.
¶ 17 In large measure, Calandra and subsequent cases have not applied the exclusionary rule in proceedings that do not culminate in criminal penalties. Calandra noted that "standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search." Id. In Janis, the Court noted: "In the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." 428 U.S. at 447, 96 S.Ct. 3021. Janis went on to hold that evidence illegally seized by state criminal law enforcement officers should not be excluded in a federal civil tax proceeding. See id. at 454, 96 S.Ct. 3021. The result was the same in Immigration & Naturalization Service v. *78 Lopez-Mendoza, 468 U.S. 1032, 1050, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), where the Court held the exclusionary rule inapplicable to a civil deportation proceeding and stated that extension of the exclusionary rule beyond the confines of cases involving criminal penalties "can be justified only if the rule is likely to add significant protection to ... Fourth Amendment rights." Id. at 1046, 104 S.Ct. 3479. The only nominally civil proceeding in which the Court has applied the exclusionary rule was in One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). In that case, the Court ruled that the forfeiture of a vehicle for illegally transporting liquor was effectively a criminal penalty masquerading as a civil proceeding. See id. at 697-98, 85 S.Ct. 1246. In those cases where the penalty is "quasi-criminal" in nature, the exclusionary rule may apply. Id.; cf. Sims v. State Tax Comm'n, 841 P.2d 6, 13-15 (Utah 1992) (Durham, J., plurality opinion) (holding exclusionary rule applicable under Utah Constitution to quasi-criminal proceeding); id. at 15-16 (Stewart, J., concurring in result based on application of United States Constitution).
¶ 18 Petitioner argues that the child protection proceeding in this case was quasi-criminal in nature. We reject this argument. The primary focus of and sole statutory justification for child protection proceedings is to protect the interests of children who are neglected or abused. See Utah Code Ann. § 62A-4a-201, -203 (Supp.1997). "[T]he welfare of children is the consideration of paramount importance," and children are removed only when it is in their best interest. Id. § 62A-4a-201(2). Although parents may suffer a severe detriment in losing temporary or permanent custody of their children, punishment of the parents is not the purpose of the proceeding. A child is never removed from a home as a "punishment" to the parent. Indeed, it is strongly presumed that "it is in the best interest and welfare of a child to be raised under the care and supervision of his [or her] natural parents." Id. § 62A-4a-201(1). In most cases, the primary objective is to effectuate a family treatment plan that will allow children to be returned to their parents. See, e.g., id. § 62A-4a-203(1)(c). In such cases, state intervention is designed to benefit parents in the long run. This case is an example. The custody decision of the juvenile court was not a termination of parental rights. In the juvenile court proceeding, the court concluded by stating to petitioner, "I want to make sure you're clean and sober and ... I am interested in getting these kids back to you. I'm not interested in keeping these kids away from you.... So [DCFS] is going to put together a plan which is going to require ... certain changes be made so that those kids have a shot at some success in life."
¶ 19 Applying the principles enunciated in Calandra and its progeny, we conclude that the Fourth Amendment exclusionary rule is inapplicable to child protection proceedings. As described above, it is well established that the deterrence of unreasonable searches and seizures is the principal purpose of the exclusionary rule and, as such, governs its application. See 1 Wayne R. LaFave, Search and Seizure § 1.1(f), at 18-20 (3d ed.1996) (citing I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). "The rule is calculated to prevent, not to repair. Its purpose is to deter  to compel respect for the constitutional guaranty in the only effectively available way  by removing the incentive to disregard it." Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), quoted in 1 LaFave, § 1.1(f), at 18. Conversely, the exclusionary rule is "`powerless to deter invasions of constitutionally guaranteed rights where the police either have no interest in prosecuting or are willing to forego successful prosecution in the interest of serving some other goal.'" 1 LaFave, § 1.2(b), at 30 (quoting Terry v. Ohio, 392 U.S. 1, 14, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
¶ 20 In light of the purpose of the exclusionary rule, as well as the State's interest in protecting children, it is improper to exclude evidence discovered during a warrantless search in subsequent child protection proceedings. *79 State officials confronting the possibility of child abuse or neglect  emergencies that occasionally lead to child protection proceedings  do not ordinarily seek to uncover incriminating evidence during the warrantless searches incidental to these investigations. There is little incentive to violate the Fourth Amendment because these officers do not usually act with the object of obtaining evidence for criminal prosecution.
¶ 21 There appears to be little likelihood that any substantial deterrent effect on unlawful police intrusion would be achieved by applying the exclusionary rule to child protection proceedings. Whatever deterrent effect there might be is far outweighed by the need to provide for the safety and health of children in peril. Although it is difficult to empirically document the impact of the exclusionary rule, see Janis, 428 U.S. at 446, 96 S.Ct. 3021, the very paucity of exclusionary rule cases in the context of child welfare proceedings indicates that allegations of improperly obtained evidence in such proceedings are rare. Thus, extension of the exclusionary rule to such cases does not promise to "add significant protection to ... Fourth Amendment rights." Lopez-Mendoza, 468 U.S. at 1046, 104 S.Ct. 3479.
¶ 22 The few courts that have addressed the question of whether the exclusionary rule should apply in child welfare proceedings have refused to apply the rule. In In re Mary S., 186 Cal.App.3d 414, 230 Cal.Rptr. 726 (1986), the court held that a "parent at a dependency hearing cannot assert the Fourth Amendment exclusionary rule, since `the potential harm to children in allowing them to remain in an unhealthy environment outweighs any deterrent effect which would result from suppressing evidence' unlawfully seized." Id. at 728 (quoting In re Christopher B., 82 Cal.App.3d 608, 147 Cal.Rptr. 390 (1978)). "The possibility that such an extension might result in the suffering or deprivation of innocent children is too high a price to pay for any slight additional deterrent effect." In re Robert P., 61 Cal.App.3d 310, 132 Cal.Rptr. 5, 12 (1976). Similarly, In re Diane P., 110 A.D.2d 354, 494 N.Y.S.2d 881, 884 (1985), held "the State's overwhelming interest in protecting and promoting the best interests and safety of minors in a child protective proceeding far outweighs the rule's deterrent value." We therefore affirm the Court of Appeals' decision to uphold the juvenile court's ruling that the exclusionary rule does not apply to child protection proceedings.
¶ 23 Because we have held the exclusionary rule inapplicable in child protective proceedings, it is unnecessary to consider in this case whether the searches by police officers were unreasonable under the Fourth Amendment. We therefore dismiss the State's cross-petition on the ground that it was improvidently granted.
¶ 24 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice ZIMMERMAN, and Justice RUSSON concur in Justice STEWART's opinion.
NOTES
[1] Although A.R. was apparently staying with petitioner at the time, her father had legal custody of her. Apparently Mr. Ha and Salt Lake Police Officer Matt Larson, who had responded to Mr. Ha's request for police assistance, were unaware that night that R.R. had legal custody of A.R.
[2] Ha was accompanied by a social worker and M.R.'s father. Apparently all three persons participated in questioning the children, but Ha was the only person to testify at the neglect hearing.
[3] Testimony at the hearing indicated that the boyfriend did indeed approach the scene shortly after Ha and A.R.'s father arrived, but that he failed to identify himself, and when the police began to arrive, he left.
[4] The Juvenile Courts chapter was repealed and reenacted in 1996. The present provision corresponding to this subsection is found at § 78-3a-103(1)(q) (Supp.1998) (defining neglected child).
[5] Although petitioner raised a state constitutional argument before the Court of Appeals, that court examined only the United States Constitution because it found that petitioner had failed to present a state constitutional argument in the juvenile court. See 937 P.2d at 1039; see also State v. Brown, 853 P.2d 851, 854 n. 1 (Utah 1992); State v. Hansen, 732 P.2d 127, 129 n. 1 (Utah 1987). Petitioner does not raise any argument under, or even cite to, the Utah Constitution before this Court.
[6] The State argues that petitioner waived her argument about the illegality of the comprehensive canine unit search by failing to raise it before the juvenile court. The State's argument mischaracterizes the proceedings before the juvenile court. Petitioner's motion in limine was handled in a very cursory fashion under obvious time pressure. The record indicates that the juvenile court and the parties were concerned with resolving the motion in a fast but reasonable manner. After the juvenile court determined that there was no basis for applying the exclusionary rule in a child protection proceeding, it simply did not entertain further argument. In this context, neither the juvenile court nor the State made any serious attempt to differentiate between the validity of the two distinct searches. It is unreasonable, therefore, for the State to assert that petitioner should have offered a separate argument related only to the second search. Petitioner argued that the initial entry was not justified at its inception and that any evidence obtained from the house without a valid warrant should be excluded. She sufficiently contested the legality of both searches before the juvenile court and did not waive her right to raise issues on appeal related to either of those searches.