246 P.3d 1188 (2010)
2010 UT App 326
STATE of Utah, in the interest of J.M.S. and J.R.S., persons under eighteen years of age.
C.S.S., Appellant,
v.
State of Utah, Appellee.
No. 20100073-CA.
Court of Appeals of Utah.
November 18, 2010.
*1189 Joyce G. Smith, Moab, for Appellant.
Mark L. Shurtleff, Atty. Gen., and John M. Peterson, Asst. Atty. Gen., Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges DAVIS, ORME, and THORNE.

OPINION
DAVIS, Presiding Judge:
¶ 1 C.S.S. (Father) appeals from two post-adjudication orders transferring temporary custody of J.R.S. and J.M.S. (the Children) to the Division of Child and Family Services (the Division). We conclude that the subject orders are not final, appealable orders. Accordingly, we lack jurisdiction over the appeal and have only the authority to dismiss it.

BACKGROUND
¶ 2 In April 2009, the Division filed a Verified Petition for Protective Services (the Petition) alleging that the Children were abused and neglected due to domestic violence between Father and the Children's mother (Mother), Father's history of drug abuse, and a history of substandard and dangerous housing. In May 2009, pursuant to Father's and Mother's stipulation, the juvenile court adjudicated the Petition and found the Children to be abused and neglected. As a result, the juvenile court granted the Division protective supervision over the Children, ordered Mother and Father to enter into a family plan with the Division, and set the matter for further review. At that time, the Children were not removed from the home.
¶ 3 At a review hearing on December 3, 2009, the juvenile court found that Father was failing to meet the Children's needs. Specifically, the juvenile court noted the following:
[Father] has not been able to put his needs for a romantic relationship ahead of the needs of [the Children]. He has been asked not to have his girlfriend spend the night in his home, but he does allow her to stay overnight. The [C]hildren go to school unkempt with dirty clothes. ... There is an issue with the stove not working properly; the washer is draining out onto the ground and there is a hole in the wall in [J.R.S.]'s bedroom that lets in cold air. ... The Division is aware that living conditions are marginal and a decision needs to be made between the [C]hildren's needs and the adults['] needs.
The juvenile court entered an order placing the Children in the custody and guardianship of the Division. The juvenile court then stayed the order (the Stayed Order) on the condition that Father comply with the following:

*1190 (1) [Father]'s girlfriend is not to be on his property ... nor be around the children; (2) No dogs are to be in the home; (3) [J.R.S.] is to attend therapy every week; (4) The stove is to be fixed ...; (5) The washer draining to the outside [is] to be fixed ...; (6) The hole in the wall [is] to be fixed. ...
¶ 4 Father failed to comply with the terms of the Stayed Order. Upon learning that Father had been noncompliant, the Division filed a motion to lift the stay and implement placement of the Children in the Division's custody. On January 4, 2010, the juvenile court held a hearing to address the motion to lift the stay. On January 6, 2010, the juvenile court entered findings of fact and an order (the January 6 Order). The juvenile court found that "[Father] either refuses or is incapable of complying with the court's orders to remedy the issues that brought the family into services" and that "[r]easonable efforts have been made by the Division ... to prevent out of home placement ...; however, those efforts ... have been unsuccessful." The juvenile court also found that continued placement in Father's custody would be contrary to the Children's best interests. Accordingly, the juvenile court lifted the stay and implemented the placement of the Children in the temporary custody of the Division. The juvenile court further ordered the Division "to provide a placement update to the court every 7 days ... until the [Children are placed" and then set the matter for "[a] Child and Family Plan Review hearing [on] 02-04-2010."[1]
¶ 5 Father subsequently filed an interlocutory appeal regarding the January 6 Order, which this court denied. On January 21, 2010, Father filed a notice of appeal,[2] which, according to Father, "indicated his intent to appeal from both [the January 6 Order] ... and the ... Stayed Order."[3] This court then ordered the parties to brief the issue of whether the Stayed Order and the January 6 Order were final for the purposes of appeal.

ISSUE AND STANDARD OF REVIEW
¶ 6 Father appeals the juvenile court's orders on several grounds. However, "[w]hether subject matter jurisdiction exists is a threshold issue that we must resolve before we may address [Father]'s substantive issues." In re K.F., 2009 UT 4, ¶ 21, 201 P.3d 985. "If we lack jurisdiction, we must dismiss." Miller v. USAA Cas. Ins. Co., 2002 UT 6, ¶ 20, 44 P.3d 663. "The question of whether an order is final and appealable is a question of law." Powell v. Cannon, 2008 UT 19, ¶ 9, 179 P.3d 799 (footnote omitted).

ANALYSIS
¶ 7 This court requested that the parties brief the issue of whether the Stayed Order and the January 6 Order are final for the purpose of appeal. It is well settled that an appeal may only be taken from a final order of the juvenile court. See In re A.F., 2007 UT 69, ¶ 2, 167 P.3d 1070; In re T.D.C., 748 P.2d 201, 202 (Utah Ct.App.1988) (mem.).
[T]he finality of an order in juvenile proceedings is determined the same way as the finality of an order in other courts. A final order is one that ends the current juvenile proceedings, leaving no question open for further judicial action. The question of whether an order is final and appealable is determined by the substance and effect of the order. In the child welfare arena, the determining factor in deciding if an order is final and appealable is *1191 whether it effects a change in the permanent status of the child. For example, termination of parental rights is final and appealable because it constitutes a change in the child's status in that it changes the child's legal relationship with his or her parents.
In re A.F., 2007 UT 69, ¶ 3, 167 P.3d 1070 (citations and additional internal quotation marks omitted). With this legal framework in mind, we now address whether the subject orders are final for the purpose of appeal.

I. The Stayed Order
¶ 8 As a preliminary matter, we note that the juvenile court entered the Stayed Order on December 4, 2009. Father did not file his notice of appeal until January 21, 2010well past the fifteen-day time limit imposed by rule 52(b) of the Utah Rules of Juvenile Procedure, see Utah R. Juv. P. 52(b) ("Appeals taken from juvenile court orders related to abuse, neglect, dependency, termination and adoption proceedings must be filed within 15 days of the entry of the order appealed from."). Accordingly, even were we to conclude that the Stayed Order was a final, appealable order, we lack jurisdiction to consider the merits of the claims Father makes relating to it.
¶ 9 However, because this court specifically requested that the parties brief the issue, we address whether the Stayed Order is a final order. We conclude that it is not. First, the Stayed Order did not effectuate a permanent change in the Children's legal status vis-a-vis Father. See generally In re A.F., 2007 UT 69, ¶ 3, 167 P.3d 1070 (stating that an order is final when "it effects a change in the permanent status of the child"). Secondly, by its terms, the Stayed Order did not end the current juvenile proceedings but, rather, ordered the removal of the Children from Father's home and then stayed enforcement thereof so long as Father met certain conditions. The juvenile court set the matter for further review at a later date, at which time the court determined that Father had failed to comply with the terms of the order.[4] Accordingly, the Stayed Order is not a final, appealable order. Cf. Francisconi v. Hall, 2008 UT App 166U, para. 6, 2008 WL 1971336 (mem.) (concluding that a stayed order "did not end[] the controversy between the litigants" and was therefore not a final order (alteration in original) (internal quotation marks omitted)).

II. The January 6 Order
¶ 10 Father argues that "[i]nasmuch as the January 4, 2010 hearing acted as an adjudication of the removal, the [January 6 Order] is final." See generally In re S.A.K., 2003 UT App 87, ¶ 13, 67 P.3d 1037 ("An adjudication order is one such judgment that we have found to be final for purposes of appeal."). Moreover, Father contends that "[i]f the finality of [the January 6 Order] is not recognized ... then a parent is necessarily deprived of their right to appeal the matter." See generally In re K.F., 2009 UT 4, ¶ 42, 201 P.3d 985 (noting that the subject order there "must be considered final for matters of appealability; otherwise, the mother may never have an opportunity to appeal this order"). For the following reasons, Father's arguments are unavailing.
¶ 11 First, contrary to Father's contention otherwise, the January 4, 2010 hearing and the January 6 Order did not constitute an adjudication of the neglect petition. Rather, Father and Mother stipulated to adjudication of the neglect petition in May 2009. Accordingly, any right Father had to appeal attached to the May 2009 adjudication order.[5]
¶ 12 Second, even if an order lifting a stay were otherwise final and appealable, whether the January 6 Order is final for the purpose *1192 of appeal turns on whether it constitutes a permanent change in the Children's status in that it changes their legal relationship with Father. See In re K.F., 2009 UT 4, ¶ 38, 201 P.3d 985. Here, Father's parental rights have not been terminated, see generally In re A.F., 2007 UT 69, ¶ 3, 167 P.3d 1070 ("[T]ermination of parental rights is final and appealable because it constitutes a change in the child's status in that it changes the child's legal relationship with his or her parents."), and there has been no other permanent change in the Children's legal status. The mere fact that the Children were removed from Father's custody, on a temporary basis, does not indicate finality for the purposes of appeal. See In re M.V., 937 P.2d 1049, 1051 (Utah Ct.App.1997) (holding that a shelter hearing order is not final and appealable). Rather, the Division has only temporary custody of the Children and further judicial proceedings are required to determine their ultimate placement. Moreover, Father still has the chance to regain custody if he complies with the juvenile court's orders. Indeed, since entry of the January 6 Order, the juvenile court has continued to revisit the case pursuant to its ongoing disposition jurisdiction. In fact, as recently as February 2010, Father was apparently seeking reunification with the Children. For the foregoing reasons, we conclude that the January 6 Order is not final and appealable.

CONCLUSION
¶ 13 We conclude that the Stayed Order and the January 6 Order are not final, appealable orders. Where an appeal is not taken from a final order, we lack jurisdiction to hear it and must dismiss the appeal. See Bradbury v. Valencia, 2000 UT 50, ¶¶ 8-9, 5 P.3d 649. Dismissed.
¶ 14 I CONCUR: GREGORY K. ORME, Judge.
THORNE, Judge, (concurring):
¶ 15 I concur in the majority opinion, as I agree that the Stayed Order and the January 6 Order were not final, appealable orders. However, I write separately to explore two areas of concern. First, I respond to Father's argument that this court's failure to treat the January 6 Order as final and appealable deprives him of his right to a direct appeal of the juvenile court's removal decision. Second, as noted by the majority opinion, see supra ¶ 9 n. 4, children are never to be removed from the home as a punishment to a parent or parents. See In re A.R., 1999 UT 43, ¶ 18, 982 P.2d 73. I believe that this prohibition on removal as punishment should also preclude the routine use of removal as a mechanism for the enforcement of court orders, which the State has argued for in this case.
¶ 16 In his initial appellate brief, Father argues that, in light of this court's denial of his petition for interlocutory appeal, the January 6 Order must be treated as final in order to preserve Father's constitutional right to appeal. See Utah Const. art. VIII, § 5. Father argues:
If the finality of the order is not recognized..., then a parent is necessarily deprived of their right to appeal the matter if [the court of appeals] also declines to hear the matter on interlocutory review. [Father] filed both an interlocutory petition and a direct appeal on the issue for this reason, and [the court of appeals] denied the interlocutory petition. Disallowing a process which allows an appeal from the merits of the issues surrounding removal renders the [Juvenile Court] Act's provisions completely meaningless and allows the State, [Guardian ad Litem], and juvenile court to side-step the parent's right to appeal.
In his reply brief, in response to the State's argument that further proceedings would be required in the juvenile court, Father argues that the only such hearings would be review hearings that would not permanently change the Children's status and would, therefore, also not be final and appealable. Accordingly, Father argues that "this is [his] only chance to appeal the removal of the Children" and that he "has appealed at the appropriate time."
¶ 17 Even assuming that there may never *1193 be a final order in this case,[1] the appeal rights of parents in Father's position are adequately protected by this court's careful consideration of petitions for interlocutory appeal. See Utah R.App. P. 5; In re A.F., 2007 UT 69, ¶ 10, 167 P.3d 1070 ("While orders that do not affect the status of the child are not immediately appealable as a matter of right, they are not rendered completely unreviewable. Discretionary review may be sought through a petition for interlocutory appeal."). Obviously, petitions for interlocutory review of removal decisions are not granted as a matter of routine. However, when such petitions are denied it is after this court's careful consideration of the circumstances of each individual case.
¶ 18 Rule 5 of the Utah Rules of Appellate Procedure provides that interlocutory review "may be granted only if it appears that the order involves substantial rights and may materially affect the final decision or that a determination of the correctness of the order before final judgment will better serve the administration and interests of justice." Utah R.App. P. 5(e). Although the granting of interlocutory review is discretionary, see In re A.F., 2007 UT 69, ¶ 10, 167 P.3d 1070, it seems to me that orders removing children from the home may qualify fori.e., meet the minimum requirements fordiscretionary review pursuant to rule 5. The right of parents to raise their children in their home is unquestionably a substantive right. See In re T.B., 2010 UT 42, ¶ 30, 232 P.3d 1026 ("[T]he United States Supreme Court has recognized that the Fourteenth Amendment provides parents a protectable liberty interest in the care, custody, and control of their children, and that such an interest is a fundamental right. ..." (internal quotation marks omitted)). Removal of children from the home may also have some impact on the final decision in the matter, as when the children's bonding with foster parents supports the later termination of parental rights, see, e.g., In re A.F.K., 2009 UT App 198, ¶ 37, 216 P.3d 980, cert. denied, 221 P.3d 837 (Utah 2009), or when parental rights are terminated for failure to correct the conditions leading to removal, see, e.g., In re D.H., 2009 UT App 32, ¶ 12, 204 P.3d 210.
¶ 19 Thus, this court's review of petitions for interlocutory appeal of removal orders should carefully consider the third qualifying factor enumerated in rule 5, whether "a determination of the correctness of the order before final judgment will better serve the administration and interests of justice." Utah R.App. P. 5(e); see also In re J.W., 2004 UT App 482, ¶ 4, 105 P.3d 962 (mem.) (per curiam) ("[T]he child's welfare outweighs the concern for judicial economy, even if it results in more than one appeal."). Just such a review happened in this case, not once, but three times by two different courtsonce on Father's petition for interlocutory appeal in this court, once on Father's motion for rehearing of the denial of that petition, and once by the Utah Supreme Court in denying certiorari review.
¶ 20 Thus, Father's right to appeal the removal of the Children has not been denied in this case. Father obtained multiple reviews of his petition for discretionary appeal. He may still appeal from a final order that issues in this matter. And, if no final order ever issues, Father may continue to seek discretionary review of other orders or may seek relief through an extraordinary writ or other judicial process. Thus, Father's due process rights to appellate review have not been violated by our requirement that direct review result from a final order or judgment.
¶ 21 Turning to my second concern, the State expressly argued in its brief that the juvenile court must be allowed to "enforce its orders, in some cases by affecting the placement of the children under its jurisdiction." At oral argument, the State reiterated its position that removal was a tool available to the juvenile court to "enforce judicial conditions." However, the Utah Supreme Court has stated:

*1194 The primary focus of and sole statutory justification for child protection proceedings is to protect the interests of children who are neglected or abused. "[T]he welfare of children is the consideration of paramount importance," and children are removed only when it is in their best interest. Although parents may suffer a severe detriment in losing temporary or permanent custody of their children, punishment of the parents is not the purpose of the proceeding. A child is never removed from a home as a "punishment" to the parent. Indeed, it is strongly presumed that "it is in the best interest and welfare of a child to be raised under the care and supervision of his [or her] natural parents." In most cases, the primary objective is to effectuate a family treatment plan that will allow children to be returned to their parents. In such cases, state intervention is designed to benefit parents in the long run.
In re A.R., 1999 UT 43, ¶ 18, 982 P.2d 73 (alterations in original) (citations omitted).
¶ 22 I believe that a prohibition on using child placement decisions as punishment should also preclude their use as routine sanctions to enforce court orders. Courts have multiple other tools at their disposal to enforce their orders, up to and including fines and imprisonment. See Utah Code Ann. § 78B-6-310 (2008) (setting penalties for contempt of court). More importantly, placement decisions must always be based on the best interest of the child. See, e.g., In re O.C., 2005 UT App 563, ¶ 21, 127 P.3d 1286 ("The Utah Supreme Court has likewise stated that the `interest and welfare of the child be given paramount consideration in all cases involving the custody of children.'" (quoting Taylor v. Waddoups, 121 Utah 279, 241 P.2d 157, 160 (1952))). Not only are the enforcement of court orders and the best interests of children two independent goals, but removal of children from the home is often traumatic to both parents and children and, even when justified, may ultimately cause more harm than good. See generally UPenn Collaborative on Community Integration, Removal from the Home: Resulting Trauma, http:// www.upennrrtc.org/var/tool/file/238-Updated% 20Trauma.pdf (surveying research examining the harms caused by removal of children from the home). For these reasons, I write to highlight the State's sanctions argument, even though the court is not reaching the merits of Father's appeal.
¶ 23 Notwithstanding these concerns, I agree with the conclusion of the majority opinion that neither the Stayed Order nor the January 6 Order was final and appealable because neither "effect[ed] a change in the permanent status of the [Children]." See In re A.F., 2007 UT 69, ¶ 3, 167 P.3d 1070. Accordingly, I concur in the majority opinion.
NOTES
[1] Since the entry of the January 6 Order, the juvenile court has continued to revisit the matter. Most recently, Father filed a Motion and Memorandum For [Father's Girlfriend] to Reside on Father's Property. In February 2010, the juvenile court denied the motion "while reunification is the goal." The juvenile court then noted, "If [Father] wishes to terminate reunification, [the court will] reconsider."
[2] Although captioned as an "amended" notice of appeal, this notice of appeal is the only one that has been filed in the case.
[3] The notice of appeal states, "Notice is hereby given that [Father] . . . appeals to the Utah Court of Appeals the Minutes, Findings, and Order of the Honorable Mary L. Manley entered in this matter on January 6, 2010." At the end of this sentence, Father's counsel added the following language by hand, referencing the Stayed Order: "and the Review and Order entered December 4, 2009."
[4] We note that it would have been improper for the juvenile court to order the removal of the Children merely as a "sanction" against Father for his failure to comply with the court's orders. Cf. In re A.R., 1999 UT 43, ¶ 18, 982 P.2d 73 ("Although parents may suffer a severe detriment in losing temporary or permanent custody of their children, punishment of the parents is not the purpose of the proceeding. A child is never removed from a home as a `punishment' to the parent."). But despite Father's implied claim to the contrary, there is no indication in the record that such occurred here.
[5] Not surprisingly, having just stipulated to it, Father chose not to appeal the May 2009 adjudication order.
[1] Contrary to Father's assertions, it is entirely likely that a final order will eventually issue in this matter. See, e.g., In re K.F., 2009 UT 4, ¶ 36, 201 P.3d 985 (listing various types of final orders that satisfy the test of "change in the permanent status of the child," including orders terminating parental rights and those that "end reunification services, terminate [the Division's] custody, and return the children to their parents").