2002 UT 22

**STATE of Utah in the interest of A.C.C., a person under eighteen years of age.**

No. 20000596.

Supreme Court of Utah.

March 5, 2002.

Mark L. Shurtleff, Att'y Gen., Christine F. Soltis, Asst. Att'y Gen., Byron F. Burmester, Salt Lake City, for the State of Utah.

Robert L. Donohoe, Salt Lake City, for A.C.C.

DURRANT, Justice.

¶ 1 Acting pursuant to a probation order that subjected A.C.C., a minor, to random searches, a probation officer searched A.C.C.'s backpack and seized a device used to inhale marijuana. Based on this seizure, the officer filed a delinquency charge against A.C.C. in juvenile court; A.C.C. then filed a motion to suppress the drug paraphernalia, arguing that the officer's search and seizure violated the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Utah Constitution. The juvenile court denied this motion, reasoning that A.C.C. lacked a reasonable expectation of privacy in his backpack because of the terms of his probation. The Utah Court of Appeals reversed and held that the Fourth Amendment required a "reasonable suspicion" on the part of the probation officer before conducting a warrantless search of A.C.C.'s belongings.

¶ 2 On certiorari, the State initially contends that the appellate court erred in applying the exclusionary rule developed with respect to the Fourth Amendment to A.C.C.'s juvenile court delinquency proceeding. It further contends that, even if the exclusionary rule applies to A.C.C.'s delinquency proceeding, the court of appeals erred in concluding that A.C.C. had a reasonable expectation of privacy regarding the contraband in his backpack. We conclude that in light of the express terms of his probation, A.C.C. had no reasonable expectation of privacy in the seized contraband and could not

suppress it. We therefore reverse the court of appeals.

## BACKGROUND

¶ 3 On November 10, 1997, a juvenile court placed A.C.C. on probation for unlawfully possessing marijuana. The court's probation order subjected A.C.C. to two special conditions. First, the court ordered "[t]hat [A.C.C.] submit to search and seizure from law enforcement for detection of drugs, weapons or other illegally possessed items." Second, the court ordered "[t]hat [A.C.C.] submit to chemical testing for controlled substances...."

¶ 4 In a chemical test administered on August 24, 1998, A.C.C. tested positive for marijuana. Approximately three weeks later, he submitted to a another drug test. This second test rendered inconclusive results, but the law enforcement officer administering it, Probation Officer Stanworth, concluded that A.C.C. had tested clean because traces of marijuana might have lingered in his system from his prior drug use.

¶ 5 On September 17, 1998, A.C.C.'s mother called Stanworth and asked him to conduct a search of A.C.C.'s car. She made this request because she suspected A.C.C. had been using marijuana and believed he was concealing it in his vehicle. On September 21, 1998, Stanworth arrived at A.C.C.'s residence and spotted A.C.C.'s car sitting in the driveway. After exiting his own vehicle, Stanworth noticed a black backpack inside A.C.C.'s car. Stanworth recognized this backpack as belonging to A.C.C. because he had searched it on an earlier occasion.

¶ 6 Thereafter, Stanworth entered A.C.C.'s residence and visited with A.C.C. and his mother. Near the end of this conversation, Stanworth informed A.C.C. that he wanted to search A.C.C.'s room and car. Upon learning the reason for Stanworth's visit, A.C.C. claimed that he felt ill but nonetheless accompanied his mother and Stanworth outside to his vehicle.

¶ 7 Opening the door of A.C.C.'s car, Stanworth immediately detected a strong odor of marijuana. He then asked A.C.C. what he

had been smoking; A.C.C. replied that he had been using cigarettes to stay off marijuana. Unpersuaded by this response, Stanworth conducted a brief search of A.C.C.'s car, which revealed that the pungent odor was emanating from A.C.C.'s backpack. Stanworth subsequently seized this backpack and transported it inside.

¶ 8 Once inside A.C.C.'s mother's home, Stanworth asked A.C.C. whether he would find any illegal substances in the backpack. A.C.C. answered "no." Despite receiving this assurance, Stanworth unzipped the backpack and discovered an eight-inch bong that showed signs of recent use.[1]

¶ 9 Based on this discovery, Stanworth filed both delinquency and probation violation charges against A.C.C. On December 2, 1998, A.C.C. filed a motion to suppress, asserting that the drug paraphernalia seized by Stanworth could not be introduced in the delinquency proceeding because it had been seized in violation of the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Utah Constitution. The juvenile court denied this motion, reasoning that A.C.C. did not have a reasonable expectation of privacy because of the terms of his probation. The court then found A.C.C. guilty of unlawfully possessing drug paraphernalia pursuant to subsection 58–37a–5(1) of the Utah Code and committed him to a secure facility within the Division of Youth Corrections for ten days.

¶ 10 A.C.C. subsequently appealed the juvenile court's ruling, and the Utah Court of Appeals reversed. In so doing, the court of appeals held that the exclusionary rule of the Fourth Amendment applied to juvenile court delinquency proceedings and that A.C.C. had a reasonable expectation of privacy, which required Probation Officer Stanworth to have a "reasonable suspicion" that A.C.C. had committed a probation violation or a crime before searching his property without a warrant. The court of appeals further held that additional factual findings were necessary to determine whether Stanworth possessed

such a "reasonable suspicion" before searching A.C.C.'s backpack and remanded the case to the juvenile court to make that determination.

¶ 11 We granted the State's certiorari petition. Before us, the State contends that the exclusionary rule of the Fourth Amendment does not apply to juvenile court delinquency proceedings. Alternatively, the State claims that, even if the exclusionary rule applies to delinquency proceedings, A.C.C., as a juvenile probationer, lacked a reasonable expectation of privacy. A.C.C. counters that the exclusionary rules of both the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Utah Constitution apply to juvenile court delinquency proceedings. A.C.C. further asserts that he possessed a reasonable expectation of privacy in the seized property that required Probation Officer Stanworth to have a "reasonable suspicion" that he committed a probation violation or a crime before searching his belongings.

## ANALYSIS

### I. STANDARD OF REVIEW

█ ¶ 12 Whether a juvenile probationer's expectation of privacy is reasonable notwithstanding a probation condition authorizing random searches is the only issue we resolve. Because this is a legal issue, we review it for correctness. *See State v. Holden,* 964 P.2d 318, 321 (Utah Ct.App.1998). Further, where that review requires us to examine statutory language, we look first to the plain meaning of the statute. *See State v. Ostler,* 2001 UT 68, ¶ 7, 31 P.3d 528.

### II. A.C.C. LACKED A REASONABLE EXPECTATION OF PRIVACY

¶ 13 On certiorari, the State proffers two arguments. First, the State asserts that the exclusionary rule of the Fourth Amendment does not apply to juvenile court delinquency hearings. Second, the State contends that A.C.C. had no reasonable expectation of pri-

---

**1.** Where the requisite mental state exists, possession of a bong, which is a device used to smoke marijuana, is prohibited by the Utah Drug Paraphernalia Act. *See* Utah Code Ann. §§ 58–37a–3(12)(*l*), –5(1) (1998). Specifically, that act provides that "[i]t is unlawful for any person to use [or] possess with intent to use [a bong for illegal purposes]." *Id.* § 58–37a–5(1).

vacy in his property due to the terms of his probation. We do not reach the question of whether the exclusionary rule applies to juvenile court delinquency proceedings, however, because we conclude that, even assuming it does, the evidence at issue was properly admitted.[2] As discussed below, the evidence was admissible because A.C.C. had no reasonable expectation of privacy relative to it.

¶ 14 Operating under our assumption that the exclusionary rule applies, we assess whether A.C.C. had a reasonable expectation of privacy regarding the contraband hidden in his backpack. A.C.C. had the burden of establishing such an expectation and must prove that "his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 132 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In other words, A.C.C., as the proponent of a motion to suppress, must prove that he possessed a "legitimate expectation of privacy" in the property seized by the government. *Id.* at 143, 99 S.Ct. 421.

A. Subjective intent

¶ 15 The test for determining whether A.C.C. had a reasonable expectation of privacy requires two inquiries on our part. *Id.* at 143 n. 12, 99 S.Ct. 421. First, we must ascertain whether A.C.C. manifested a subjective expectation of privacy. *Id.* In answering this question, the juvenile court found that A.C.C. harbored a subjective expectation of privacy, noting that "he hid the contraband in his backpack ... and not in his room [where] his mother ... frequently [conducted] searches." The juvenile court added that it was A.C.C.'s "last wish ... to have the contraband discovered by his probation officer or his parent." The court of appeals noted this finding in affirming the juvenile court's conclusion. We also agree with the juvenile court, concluding that A.C.C. manifested a subjective expectation of privacy because he hid the contraband in a private location. *Cf. In re Tyrell*, 8 Cal.4th 68, 83, 32 Cal.Rptr.2d 33, 876 P.2d 519 (Cal.1994) (hold-

ing that a juvenile's attempt to hide illegal contraband demonstrated a subjective intent to maintain his privacy as to the object).

B. Reasonableness

¶ 16 Although we agree that A.C.C. manifested a subjective expectation of privacy, "the Fourth Amendment does not protect subjective expectations of privacy that are unreasonable or otherwise illegitimate." *New Jersey v. T.L.O.*, 469 U.S. 325, 338, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (citation and internal quotation omitted). Rather, to invoke the protective features of the Fourth Amendment's exclusionary rule, A.C.C.'s subjective expectation of privacy "must be one that society is prepared to recognize." *Id.* Hence, the second question we must resolve is whether A.C.C. manifested a subjective expectation of privacy that was reasonable. *Hudson v. Palmer*, 468 U.S. 517, 525, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (announcing "that the applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." (citation and internal quotations omitted)).

¶ 17 To ascertain the reasonableness of A.C.C.'s subjective expectation of privacy under the Fourth Amendment, we initially seek guidance from the United States Supreme Court. The Supreme Court has declared that "although some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] ... the Fourth Amendment imposes no irreducible requirement of such suspicion." *T.L.O.*, 469 U.S. at 342, n. 8, 105 S.Ct. 733 (internal quotations and alterations omitted). As a result, suspicionless searches have been permitted in some circumstances. *See, e.g., Hudson*, 468 U.S. at 526, 104 S.Ct. 3194.

¶ 18 In determining whether a suspicionless search is justified, the Court has balanced two factors against each other: (1) the individual's privacy interest and (2) the gov-

---

**2.** We note that there are persuasive arguments both in favor and against applying the exclusionary rule to juvenile court delinquency proceedings. Similar to the United States Supreme Court in *New Jersey v. T.L.O.*, however, we find it unnecessary to decide this issue today. 469 U.S. 325, 327–328, 331–332, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

ernment's interest in effectively operating its institutions. *Id.* For example, in *Hudson,* the Supreme Court held that "society [wa]s not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell...." *Id.* The Court reached this conclusion after weighing the privacy interests of the prisoner against the legitimate interests of the government. *Id.* at 527, 104 S.Ct. 3194. After balancing these interests, the Court reasoned that "privacy rights for prisoners ... simply [could not] be reconciled with the concept of incarceration and the needs and objectives of the penal institution[ ]." *Id.* at 526, 104 S.Ct. 3194.

¶ 19 Recently, in *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), the Supreme Court reaffirmed the viability of this balancing test. In that case, the Court implicitly examined the privacy rights retained by an adult probationer who was required to "[s]ubmit his ... person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* at 589. Upholding this condition, the Court stated that "[a]l-though the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable." *Id.* at 592. The Court then explained that California's legitimate interests in its adult probation system (i.e., rehabilitation of the probationer and protection of other citizens) outweighed Knights's individual privacy interest and per-

mitted a reduction in his right to privacy.[3] *Id.* at 591–92.

¶ 20 Our own case law provides further support for engaging in a balancing test to determine the reasonableness of an individual's expectation of privacy. For instance, in *State v. Velasquez,* 672 P.2d 1254 (Utah 1983), we concluded that the reasonableness of an adult parolee's expectation of privacy could not be determined without considering "both ... the government function involved" and "the private interest ... affected." *Id.* at 1259 (internal quotations omitted). We then "balanc[ed] the interests of both the state and the individual" and held that it was "not unreasonable for a conditionally released convict to be accorded a more narrowly protected privacy interest in order to facilitate" the operation of the adult parole system. *Id.* at 1259–60. Thus, like the United States Supreme Court, we too have stated that whether an individual convicted of a crime has any reasonable expectation of privacy requires a balancing of the government's interest in operating its institutions and the individual's privacy interest.

¶ 21 Applying this balancing test to the instant case, we conclude that a juvenile probationer who is subjected to a probation condition authorizing random searches has no reasonable expectation of privacy because such an expectation is inconsistent with the fundamental objective of Utah's juvenile probation system.[4] Consequently, we hold that A.C.C. lacked any reasonable expectation of privacy as to the contraband seized by Probation Officer Stanworth and that the search at issue was permissible regardless of the

3. In *Knights,* the Supreme Court did not reach the question of whether the search at issue was justified even absent a "reasonable suspicion." *Knights,* 122 S.Ct. at 592 n. 6 (stating that "[w]e do not decide whether the probation condition so diminished, or completely eliminated, Knights's reasonable expectation of privacy ... that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment."). Instead, the Court held that (1) the Fourth Amendment's reasonableness requirement mandated "no more than a reasonable suspicion to conduct a search of [the probationer's]

house" and (2) that the officer who conducted the search had such a suspicion. *Id.* at 592–93.

4. The juvenile court's probation order mandated that A.C.C. "submit to search and seizure from law enforcement for detection of drugs, weapons or other illegally possessed items." It imposed no warrant requirement for such searches nor did it impose a requirement of "probable cause" or "reasonable suspicion." Accordingly, the order allowed random searches unsupported by a warrant or "reasonable suspicion," and A.C.C. does not argue otherwise. Rather, he contests the constitutionality of the order.

existing level of suspicion.[5] *Cf. In re Tyrell,* 8 Cal.4th at 86, 32 Cal.Rptr.2d 33, 876 P.2d 519 (concluding that a juvenile probationer subject to a valid search condition had no reasonable expectation of privacy).

¶ 22 In reaching this conclusion, we first note that A.C.C.'s privacy interest pales in comparison to the privacy interest retained by citizens not on probation. His privacy right was limited because he knew, or should have known, that his activities were being routinely and closely monitored by his probation officer. *Cf. People v. Reyes,* 19 Cal.4th 743, 753, 80 Cal.Rptr.2d 734, 968 P.2d 445 (Cal.1998). In fact, given the conditions of his probation, A.C.C. was on notice that he had to "submit to search and seizure from law enforcement for detection of drugs, weapons or other illegally possessed items." He knew, or should have known, of this condition because he signed the probation order imposing it. For that same reason, A.C.C. was aware that he had to "submit to chemical testing for controlled substances." His privacy interest was therefore minimal when compared to citizens not on probation.

¶ 23 Further, Utah's interest in effectively operating its juvenile probation system would be hindered by a rule mandating that probation officers possess a certain level of suspicion before searching a juvenile probationer. The primary goal of the juvenile system established in Utah is to act in the child's best interest and that goal would be undermined if courts were precluded from subjecting juvenile probationers to random searches where appropriate. *See generally,* Utah Code Ann. §§ 78–3a–102 to –914 (Supp. 2001).[6] Accordingly, a juvenile probationer subject to a probation condition that authorizes random searches has no reasonable expectation of privacy because such an expectation is inconsistent with the predominant goal of Utah's juvenile probation system.

■ ¶ 24 Even if the effective operation of the juvenile court system did not require such an outcome, however, we conclude that there is an alternative reason for finding A.C.C. lacked a reasonable expectation of privacy. "Probation is one point on a continuum of possible punishments ranging from solitary confinement ... to a few hours of mandatory community service." *Knights,* 122 S.Ct. at 591 (internal quotations, citations, and ellipsis omitted). In addition,

[i]nherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled. Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.

*Id.* (citation and internal quotations omitted).

¶ 25 Here, the juvenile court judge, who sentenced A.C.C. to probation, determined that, among other things, it was necessary to subject him to a probation condition that authorized random searches. Significantly, the court was not obligated to impose probation as punishment. *See* Utah Code Ann.

---

**5.** We limit our holding to the facts of this case and make no pronouncement regarding whether a *police officer* could have relied upon the terms of A.C.C.'s probation to conduct a warrantless search in the absence of a "reasonable suspicion."

**6.** Juvenile courts are obligated by statute "to act in the *best interests of the minor* [ ] in all cases." Utah Code Ann. § 78–3a–102(5)(g) (Supp.2001) (emphasis added). No similar requirement exists, however, with respect to adults placed on parole. Thus, although we previously held in *Velasquez* that parole officers must have a "reasonable suspicion" before searching adult parolees, 672 P.2d at 1260, the statutory mandate imposed upon juvenile courts distinguishes Utah's juvenile probation system from its adult counterpart.

Moreover, unlike the adult parole system, the juvenile probation system established in Utah is monitored directly by the court that imposed the probation sentence on the juvenile. *See* Utah Code Ann. § 78–3a–121(1) (Supp.2001). In fact, in contrast to the adult parole scheme, which is administered by a separate entity, a juvenile court stands in loco parentis to a minor on probation, continues to have jurisdiction over a juvenile adjudicated a delinquent, *see id.,* and designates its "probation department" to supervise the minor. *See* Utah R. Jud. Admin. 7–304(1)–(2) (2001). Accordingly, Utah's juvenile probation system varies in several respects from its adult counterpart and need not be treated identically.

§ 78–3a–118 (Supp.2001). Instead, it could have imposed some other punitive measure such as placing A.C.C. in "secure confinement" within the Division of Youth Corrections. *Id.* § 78–3a–118(2)(d)(i). Had the juvenile court taken this latter course and placed A.C.C. in secure confinement, his freedoms and civil liberties would have been severely restricted. *Cf. Hudson,* 468 U.S. at 524, 104 S.Ct. 3194. Indeed, while in this confined state, A.C.C. would not have possessed any reasonable expectation of privacy. *Cf. id.* at 526, 104 S.Ct. 3194.

¶ 26 By choosing to impose a lesser punishment, however, we cannot see how the court lost its ability to restrict A.C.C.'s expectation of privacy to be free from random searches. In our view, if the court could completely restrict A.C.C.'s privacy rights by placing him in secure confinement, logic demands that the court should also be permitted to impose that same restriction while ordering a lesser punishment. Put another way, since the juvenile court was authorized to completely restrict A.C.C.'s right to privacy and such a decision would have been deemed constitutional, its decision to place him on probation subject to a condition that his belongings could be searched randomly should also be permitted.

¶ 27 Accordingly, we hold that, due to the express terms of his probation as well as the sentencing discretion afforded juvenile courts, A.C.C. lacked any reasonable expectation of privacy under the Fourth Amendment.[7]

## CONCLUSION

¶ 28 We conclude that A.C.C. had no reasonable expectation of privacy regarding the drug paraphernalia seized by Probation Officer Stanworth. A.C.C. lacked such an expectation of privacy because the express terms of his probation permitted random searches and invalidating such terms would be incon-

sistent with the fundamental objective of Utah's juvenile probation system. Additionally, the juvenile court's greater power to place A.C.C. in secure confinement and negate his right to privacy included the lesser power to release him into society subject to a probation condition authorizing his belongings to be searched randomly. We therefore reverse the court of appeals' decision.

¶ 29 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.

---

**7.** In addition to his Fourth Amendment argument, A.C.C. contends that we can affirm the court of appeals' ruling on the ground that the search conducted by Probation Officer Stanworth violated Article I, Section 14 of the Utah Constitution. A.C.C. cites no legal authority explaining why we should construe our state constitution in a manner distinct from the Fourth Amendment. As we have repeatedly noted, we are "not a depository in which [a] party may dump the burden of argument and research." *State v. Norris,* 2001 UT 104, ¶ 28, —— P.3d —— (internal quotations and citations omitted). Accordingly, we decline to address this claim. *Id.*