2009 UT 15

**STATE of Utah, Plaintiff and Appellee,**

v.

**Nicholas Frank MORENO, Defendant and Appellant.**

**No. 20070240.**

Supreme Court of Utah.

Feb. 20, 2009.

Mark L. Shurtleff, Att'y Gen., Joanne C. Slotnik, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Randall C. Allen, Cedar City, for defendant.

1. Formerly codified as Utah Code section 78–3a–118. The Legislature renumbered Title 78 during the 2008 general legislative session; however, because substantive changes were not made to the sections of the Juvenile Code at issue in this case, we cite to the renumbered sections of the Juvenile Code.

On Certification from the Utah Court of Appeals

NEHRING, Justice:

## INTRODUCTION

¶ 1 Nicholas Moreno appeals the juvenile court's denial of his motion to dismiss a contempt finding he received from the juvenile court. That court adjudicated his daughter delinquent for possession of marijuana and attempted possession of methamphetamine. The juvenile court also denied Mr. Moreno's motion to vacate his guilty plea to an earlier contempt charge made by the same court. Both contempt charges arose out of Mr. Moreno's failure to undergo drug testing, which the juvenile court ordered as part of his daughter's delinquency adjudication. The question before the juvenile court was whether it had jurisdiction to require a parent of a delinquent child to undergo drug testing in a delinquency proceeding. The juvenile court held that it had the power to order parents to submit to drug testing in the context of a child's delinquency adjudication because the Legislature empowered it to impose reasonable conditions on parents whose children were under the jurisdiction of the court. Utah Code Ann. § 78A–6–117 (2008).[1] Mr. Moreno appealed, and we reverse.

## BACKGROUND

¶ 2 C.M., the juvenile daughter of Mr. Moreno, was adjudicated delinquent for possession of marijuana and attempted possession of methamphetamine. She was later sent to detention for violating the terms of her probation by testing positive for marijuana. As part of C.M.'s delinquency adjudication, the court ordered that her father, Mr. Moreno, complete a urinalysis and hair test for illegal drugs that same day. The court justified its decision to require Mr. Moreno to undergo drug testing with the following findings: (1) Mr. Moreno was considered a threat to law enforcement; (2) C.M.'s grandparents thought Mr. Moreno was an alcohol-

ic; (3) occasional domestic disturbances had occurred in the home; and (4) Mr. Moreno evaded the police on one occasion, although he was never charged. Additionally, because the police in Parowan, Utah, suspected that Mr. Moreno and his girlfriend, Karen Hardy, "may be cooking meth in the hills," the juvenile court also ordered Ms. Hardy to submit to drug testing. Ms. Hardy was a known drug user and had previously served time in prison on drug charges.

¶ 3 Mr. Moreno failed to appear for drug testing as ordered and was charged with contempt of court under Utah Code section 78A–6–1101. Mr. Moreno pled guilty, and the court stayed a fine of $300 and thirty days in jail on the condition that Mr. Moreno submit to future random drug tests. Mr. Moreno completed a drug test and tested negative for drug use. The court later insisted that Mr. Moreno submit to another random drug test, but Mr. Moreno refused. His refusal to complete drug testing caused the court to schedule a second contempt hearing, which Mr. Moreno did not attend. The Fifth District Juvenile Court issued a warrant for Mr. Moreno's arrest and reinstated the thirty-day jail term.

¶ 4 Mr. Moreno filed a motion to dismiss the second contempt charge and also moved to vacate his guilty plea to the earlier contempt charge. He argued that the juvenile court exceeded its narrow grant of jurisdiction over parents of children involved in delinquency hearings and that the court did not have jurisdiction to order him to submit to drug testing. Mr. Moreno also contended that under Utah Code section 78A–6–108(6), the juvenile court can only order a parent to complete physical testing in child custody hearings and child welfare cases. Alternately, he presented the argument that the order to submit to drug testing was not a "reasonable condition" that the juvenile court could impose under Utah Code section 78A–6–117(2)(p)(i) since it did not relate to conditions imposed on the minor and because the juvenile court had no reason to suspect that Mr. Moreno was abusing drugs. Finally, Mr. Moreno argued that drug testing violated his Fourth and Fifth Amendment rights.

¶ 5 The State countered that the juvenile court had jurisdiction to order Mr. Moreno to be drug tested as part of his daughter's delinquency proceeding. The State argued that the Legislature has granted the juvenile court broad authority to make "reasonable orders ... for the best interest of the minor" under section 78A–6–117(2)(t) and that the court's authority should be interpreted broadly. Accordingly, the State argued that the juvenile court's order requiring Mr. Moreno to submit to drug testing was reasonable.

¶ 6 The juvenile court denied both of Mr. Moreno's motions to dismiss, and he appealed. We have jurisdiction over the appeal pursuant to Utah Code section 78A–3–102(3)(b) (2008).

## STANDARD OF REVIEW

¶ 7 Whether the juvenile court has subject matter jurisdiction over parents whose children are involved in delinquency proceedings is a question of law, which we review for correctness. *K.S. v. S.H. (In re B.B.)*, 2002 UT App 82, ¶ 4, 45 P.3d 527. Determining whether the juvenile court's decision that imposing drug testing on Mr. Moreno was a reasonable condition requires us to construe the term reasonable as a matter of law. In issuing orders, however, the juvenile court is presented with a wide variety of potential fact patterns. In its call to both interpret reasonableness as a matter of law and consider the range of possible fact patterns, the question in this case is analogous to the review of whether a police stop was supported by probable cause. Where a court finds that under a particular set of facts there is probable cause to support a search, we review the court's decision as a question of law. *State v. Chapman*, 921 P.2d 446, 450 (Utah 1996). Although we review the court's decision for correctness, because of the numerous fact patterns that can occur, some deference is given to the lower court's ruling. *Id.* Because the question of whether a condition imposed on a parent by the juvenile court is similar to the question of whether probable cause was present, we will review the juvenile court's decision under the same standard of review.

## ANALYSIS

[3, 4] ¶ 8 Juvenile courts are created by statute, and their jurisdiction is limited to the power that is specifically conferred on them by the Legislature. *Hardinger v. Scott (State ex rel. B.B.)*, 2004 UT 39, ¶ 13, 94 P.3d 252. Two provisions of the Juvenile Court Act give the court jurisdiction over parents in certain delinquency cases. The first provision is Utah Code section 78A–6–117(2)(p)(i), which gives the court power to "order reasonable conditions to be complied with by a minor's parents or guardian … or any other person who has been made a party to the proceedings."[2] The second provision is Utah Code section 78A–6–117(2)(t), which specifies that "[t]he court may make any other reasonable orders for the best interest of the minor or as required for the protection of the public, except that a child may not be committed to jail or prison." These statutes reflect a legislative policy judgment to give juvenile courts broad authority with respect to the remedies ordered so long as they are in the best interest of the child.

¶ 9 By their plain language, these sections give the juvenile court subject matter jurisdiction over parents whose children are subject to delinquency proceedings and third parties associated with those children. Additionally, section 78A–6–1101(1) allows the juvenile court to require "[a]ny person who willfully violates or refuses to obey any order of the court" to be "proceeded against for contempt of court." Utah Code Ann. § 78A–6–1101(1) (2008). The ability to hold "any person" in contempt clearly indicates that the juvenile court may exercise jurisdiction over adults.

[5–9] ¶ 10 Although subsections 78A–6–117(2)(p)(i) and (t) appear to grant the juvenile court extensive power, both provisions allowing the juvenile court to impose orders on parents are limited to mandates that are reasonable. The question that we answer today is whether the conditions imposed on Mr. Moreno were reasonable.

Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning. We read [t]he plain language of a statute … as a whole and interpret its provisions in harmony with other provisions in the same statute and with other statutes under the same and related chapters. We do so because a statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.

*Sill v. Hart*, 2007 UT 45, ¶ 7, 162 P.3d 1099 (alteration and omission in original) (citations and internal quotation marks omitted). By contrast, where statutory language is unclear, this court will interpret the ambiguous provision in a way that protects the public interest. *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 (Utah 1991). Finally, "[i]n construing statutes, we are obligated to avoid interpretations that conflict with relevant constitutional mandates." *State v. Mooney*, 2004 UT 49, ¶ 12, 98 P.3d 420 (internal quotation marks omitted). In determining what types of juvenile court orders directed at parents are reasonable in a child delinquency proceeding and are therefore within the juvenile court's jurisdiction, we will bring to bear each of these rules of statutory construction.

## I. PLAIN LANGUAGE, PURPOSE AND INTENT OF THE STATUTE, AND PUBLIC INTEREST

¶ 11 Reasonable is a term that by its ordinary meaning connotes flexibility and a range of permissible conduct. Thus, as used in section 78A–6–117, "reasonable" could permit the court to impose a wide range of orders on parents whose children are adjudicated delinquent. Its reach is limited, however, by the purpose and intent of the statute stated in other provisions of the Juvenile Court Act. For example, section 78A–6–102(5)(b) states that the purpose of the juvenile court is to "order appropriate measures to promote guidance and control, preferably in the minor's own home, as an aid in the

---

2. The record does not indicate whether Ms. Hardy was made a party to C.M.'s juvenile proceeding. She was, however, also charged with contempt by the juvenile court for refusing to submit to drug testing. She does not join in Mr. Moreno's appeal.

prevention of future unlawful conduct and the development of responsible citizenship." Utah Code Ann. § 78A–6–102(5)(b) (2008). Additionally, section 78A–6–102(5)(g) provides further that the purpose of the juvenile court is to, "consistent with the ends of justice, act in the best interests of the minor in all cases." *Id.* § 78A–6–102(5)(g).

¶ 12 In *State v. Schofield*, we held, "As a tribunal geared toward the special needs of youth offenders, the juvenile court . . . is not designed to deal with adults charged with crimes. When adults do become involved with the juvenile court, its statutory jurisdiction over them is appropriately very limited." 2002 UT 132, ¶ 17, 63 P.3d 667. Court orders in such cases cannot exceed the limited grant of statutory authority. *Hardinger v. Scott (State ex rel. B.B.),* 2004 UT 39, ¶ 13, 94 P.3d 252. A practical way to gauge the reasonableness of conditions imposed under subsections 78A–6–117(2)(p)(i) and (t) is to account for them in light of the likelihood that they would further the goals of the Act stated in section 78A–6–102.

¶ 13 The stated purpose of the Act requires that orders under 78A–6–117(2)(p)(i) and (t) must have behavioral reform of the minor as the sole motivation. Therefore, for reasons set out below, juvenile court orders may not be aimed at punishing the parent, and there must be some nexus between the actions of the parent that are to be constrained by the court's conditions, the behavior of the minor that led to her adjudication as delinquent, and the order imposed by the court. A nexus between the actions of the parent, the misbehavior of the child, and the order of the court ensures that the court's order will advance the statute's goal of reforming the minor's behavior.

¶ 14 Because the juvenile court's purpose is rehabilitation of minors, juvenile court orders must first have goals other than punishing the parent. Utah Code Ann. § 78A–6–102(5)(b); *Schofield,* 2002 UT 132, ¶ 16, 63 P.3d 667. In determining whether an action is punishment, we

[f]irst . . . determine whether a statute indicates an express or implied preference for a civil or criminal penalty. Second, where a statute is intended to establish a civil penalty, we must inquire further to determine whether the statutory scheme is so punitive either in purpose or effect as to negate that intention.

*State v. One 1980 Cadillac,* 2001 UT 26, ¶ 10, 21 P.3d 212 (citation and internal quotation marks omitted).

¶ 15 In *One 1980 Cadillac,* we were called upon to determine if the imposition of a civil fine was a punishment such that it would violate the Double Jeopardy Clause if imposed after a criminal conviction. Although the question in this case does not concern double jeopardy, the test used to determine whether the civil fine in *One 1980 Cadillac* was a punishment is suitable for guiding the analysis of whether ordering Mr. Moreno to undergo drug testing in the context of his daughter's delinquency proceeding is punitive.

¶ 16 The second component of a test of a condition's reasonableness is whether there is a logical connection between the parent's conduct, the minor's conduct, and the court order. If the court order is premised on a belief that there may be drug use in the home, then there must be, at minimum, sufficient evidence to suggest that drug use is in fact occurring in the home. . Finally, if the goal of the order is to reform the minor's drug use, the order must be related to drug use rather than to another aspect of the parent's behavior unrelated to drugs. By requiring that to be reasonable the conditions imposed by the court order bear some relationship to the behavior of both the minor and the adult, the test we announce today ensures that court-ordered restrictions and expectations conform to generally accepted parenting norms. A court order requiring a parent to complete drug testing that has no connection with the circumstances of the case would not be reasonable.

¶ 17 An example of the connection required can be found in child welfare cases. In those cases, before a parent's parental rights may be terminated, sufficient record facts must be presented to satisfy the statutory elements for termination, including that termination of parental rights is in the

best interest of the minor. *M.G. v. M.S.H. (In re T.H.)*, 2007 UT App 341, ¶ 11, 171 P.3d 480. In *M.T.M. v. State (State ex rel. T.M.)*, the court determined that a father's parental rights were correctly terminated because there was a connection between the court order terminating his rights and facts material to his relationship with the child, such as his past incidents of domestic violence that occurred in front of the children, his use of methamphetamine in the presence of the children that caused the children to test positive for methamphetamine residue, his failure to stay in drug treatment, and his refusal to stop leaving the children in the care of their mother, who was a habitual methamphetamine user. 2006 UT App 435, ¶ 18, 147 P.3d 529. An analogous standard can be applied in child delinquency cases. The greater the nexus between the order and reformatory goal, the more likely an order and the conditions it imposes will be reasonable.

 ¶ 18 While a connection between the facts of the case, the court order, and the rehabilitative goal is necessary for an order imposing conditions on the parent to be reasonable, this does not mean that court orders directed at parents require probable cause to believe that the parent is engaging in undesirable behavior in order to be reasonable. Nor does it require that there be probable cause to believe that the parent's alleged behavior caused the delinquent behavior of the child for the order to be reasonable. Rather, where the condition imposed by the juvenile court does not impair the parent's constitutional rights, an order will be reasonable if it is based on a more than wholly speculative belief that the parent is engaging in behavior that is likely contributing materially to the minor's delinquent behavior.

 ¶ 19 Consideration for the parent's constitutional rights brings us to the final step of our interpretation of "reasonable condition." Because we must construe statutes to be constitutional whenever possible, *Mountain States Tel. & Tel. Co. v. Garfield County*, 811 P.2d 184, 187 (Utah 1991), even

if an order meets the two tests for reasonableness articulated above, it will not be reasonable if it violates established constitutional rights of the parent.

## II. CONSISTENCY WITH ESTABLISHED CONSTITUTIONAL RIGHTS

 ¶ 20 Mr. Moreno argued that the order to submit to drug testing violated his Fourth and Fifth Amendment rights. Because we find that the order was unreasonable based on its violation of Mr. Moreno's Fourth Amendment rights, we will not address whether it violated his Fifth Amendment rights.

 ¶ 21 An order that a parent submit to drug testing constitutes a search under the Fourth Amendment. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (holding that drug testing constituted a search under the Fourth Amendment); *see also Chandler v. Miller*, 520 U.S. 305, 313, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997) ("[G]overnment-ordered collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable." (internal quotation marks omitted)). As such, even where a drug test is undertaken for a purpose other than a criminal investigation, it is governed by the constitutional restrictions on searches. *See O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (holding that the protections of the Fourth Amendment apply to civil as well as criminal proceedings). "Except in certain well-defined circumstances, a search or seizure ... is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner*, 489 U.S. at 619, 109 S.Ct. 1402. Generally, where a search is conducted without a warrant, it must fall into one of the limited exceptions to the warrant requirement and must still be based on probable cause. *C.R. v. State (In re A.R.)*, 937 P.2d 1037, 1042 (Utah Ct.App.1997); [3] *see*

---

**3.** *In re A.R.* lists the following recognized exceptions to the warrant requirement: the good faith exception, the exigent or emergency circum- stances exception, and the stop-and-frisk exception. 937 P.2d at 1042 n. 7. Other exceptions

also *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). "Probable cause exists where the facts … acquired from reasonably trustworthy sources are sufficient to permit a reasonably cautious person to believe that an offense has been, or is being, committed." *Brigham City v. Stuart,* 2005 UT 13, ¶ 16, 122 P.3d 506, *rev'd on other grounds* 547 U.S. 1017, 126 S.Ct. 1607, 164 L.Ed.2d 297 (2006).

■■■ ¶ 22 Although probable cause is usually required for a search to be lawful, the Fourth Amendment does not prohibit all warrantless searches, only those that are unreasonable. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This is because reasonableness is "the touchstone of the constitutionality of a governmental search." *Bd. of Educ. v. Earls,* 536 U.S. 822, 828, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002). The Supreme Court has stated that "although some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] … the Fourth Amendment imposes no irreducible requirement of such suspicion." *New Jersey v. T.L.O.,* 469 U.S. 325, 342 n. 8, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (alteration in original) (internal quotation marks omitted). "Where a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause, [the Court has] not hesitated to adopt such a standard." *Id.* at 341, 105 S.Ct. 733.

¶ 23 One of the areas where warrantless searches have been held to be reasonable is where there is a reduced expectation of privacy or no expectation of privacy. *See, e.g., State v. Velasquez,* 672 P.2d 1254, 1260 (Utah 1983). In *Velasquez,* we held that a parolee has a reduced expectation of privacy and could be searched without a warrant if his parole officer reasonably believed the parolee violated his parole or committed a crime. *Id.* Similarly, in *State ex rel. A.C.C.,* we held that a juvenile probationer had no reasonable expectation of privacy and therefore a suspicionless search of his belongings could be conducted. 2002 UT 22, ¶ 21, 44 P.3d 708.

Suspicionless searches of prisoners have also been allowed based on a finding that prisoners have no reasonable expectation of privacy. *Hudson v. Palmer,* 468 U.S. 517, 528, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Reaching such conclusions "requires a balancing of the government's interest in operating its institutions and the individual's privacy interest." *A.C.C.,* 2002 UT 22, ¶ 20, 44 P.3d 708.

¶ 24 A similar balancing test has been applied to determine the extent of a student's expectation of privacy in a school setting. *T.L.O.,* 469 U.S. at 341, 105 S.Ct. 733. In *T.L.O.,* the Court found that although students had a privacy interest, the school's interest in maintaining order was greater than that interest and permitted searches without warrants based on suspicion that did not rise to the level of probable cause. *Id.* Because the balance tipped in favor of the school's interest, students had a privacy interest that was less than they would have had outside the school setting.

¶ 25 Another instance in which warrantless searches are sometimes held to be reasonable is the so-called administrative search. An administrative search is a search conducted or required by a government actor but which does not have criminal investigation as its goal. Because the strict requirement for probable cause is "peculiarly related to criminal investigations," it "may be unsuited to determining the reasonableness of administrative searches where the [g]overnment seeks to prevent the development of hazardous conditions." *Earls,* 536 U.S. at 828, 122 S.Ct. 2559 (emphasis omitted) (internal quotation marks omitted). Search schemes where drug testing is required absent any suspicion of wrongdoing have been upheld where the scheme was enacted for purposes other than criminal investigation and where there is a "special need" for such searches. *Chandler,* 520 U.S. at 313–14, 117 S.Ct. 1295; *see also Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 677, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (holding that the United States Customs Service's requirement that employees be drug tested was

include the motor vehicle exception, searches

incident to arrest, and inventory searches.

reasonable); *Skinner*, 489 U.S. at 634, 109 S.Ct. 1402 (holding that a statute requiring testing of rail employees involved in accidents without regard to suspicion was reasonable). In *Chandler*, the Court held that where

> "special needs"—concerns other than crime detection—are alleged in justification of a Fourth Amendment intrusion, courts must undertake a context-specific inquiry, examining closely the competing private and public interest advanced by the parties.... In limited circumstances, *where the privacy interests implicated by the search are minimal,* and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.

520 U.S. at 314, 117 S.Ct. 1295 (emphasis added) (citations omitted); *see also Earls,* 536 U.S. at 838, 122 S.Ct. 2559 (holding that preventing drug use among students was a special need that justified a suspicionless drug testing regime for all students participating in extracurricular activities).

¶ 26 The hallmark of the cases allowing warrantless searches unsupported by probable cause is a weighing of the privacy interest and the government interest and a finding that the burden a probable cause requirement would impose on the government interest outweighs the privacy interest at stake.

██ ¶ 27 Because ordering the parent of a delinquent child to undergo drug testing is not part of a criminal investigation, determining whether such an order is constitutional will depend on whether the search was reasonable under the Fourth Amendment. To do so, we must first determine the extent of the parent's expectation of privacy and whether it is reduced such that a search based on less than probable cause would be justified. We will do so by "balancing ... the government's interest in operating its institutions and the individual's privacy interest." *A.C.C.,* 2002 UT 22, ¶ 20, 44 P.3d 708. If analysis under the balancing test does not demonstrate that the parent has a reduced expectation of privacy justifying a search

based on less than probable cause, then the search must be supported by probable cause.

## A. Privacy Interest of Parents

¶ 28 The first part of the balancing test requires an assessment of the extent of the privacy interest of the person being searched, in this case, the parent of a delinquent juvenile. There is nothing in the Juvenile Court Act that suggests that the parent of a delinquent juvenile has a limited right to privacy. In contrast, the finding that the juvenile probationer in *A.C.C.* had a limited privacy interest was heavily influenced by the fact that the juvenile's activities were being monitored while he was on probation and by the fact that he had signed a probation order subjecting him to search for the detection of drugs. *A.C.C.,* 2002 UT 22, ¶ 22, 44 P.3d 708. In *Velasquez,* we found that a person on parole had a diminished privacy interest because he was being closely supervised as a condition of a sentence for a crime. 672 P.2d at 1259. No similar circumstances exist in the case of a parent whose child has been adjudicated delinquent.

██ ¶ 29 A parent does not surrender his expectation of privacy merely because he acquires the status of a parent of a minor who has been adjudicated delinquent. In *Skinner,* the Supreme Court found that the railroad employees subject to testing under the statute at issue had a limited privacy right because of their status as employees. 489 U.S. at 624–25, 109 S.Ct. 1402. As employees, they were not free to come and go as they pleased and were subject to other restrictions placed on them by their employers. *Id.* The *Skinner* Court also found that the pervasive regulation of employees in the rail industry, including rules requiring hearing and sight tests as well as skill tests, demonstrated that those employees had limited privacy expectations. *Id.* at 627, 109 S.Ct. 1402. There is no corresponding pervasive regulation and oversight of parents which would lead to a conclusion that they have a limited privacy interest. Although the juvenile court may fashion some orders affecting parents in the context of a delinquency case, this power is not equivalent to the pervasive regulation present in *Skinner.*

¶ 30 Additionally, parents of delinquent children, even those who are suspected of drug involvement, do not undertake any voluntary actions that reduce their privacy interests. In *A.C.C.*, *Velasquez*, *Skinner*, and *Von Raab*, the privacy interest of the people being searched was reduced because of their earlier bad choices or because of their voluntary participation in industries that were heavily regulated.

¶ 31 Because parents of delinquent children have no reason to believe their behavior will be more closely monitored than it would were their children not delinquent, and because there is no legitimate justification for the regulation of parents outside of a welfare context, even for those parents with delinquent children, there is no basis for finding that their privacy interest is significantly reduced.

### B. Government Interest

¶ 32 The second part of the balancing test requires us to determine the significance of the government interest in conducting the search. In a delinquency proceeding, the government interest in ordering the parent of a child involved in drugs, who is himself suspected of using drugs, to undergo drug testing is to ensure that the parent is drug free and therefore is not providing an inappropriate example to the minor or directly contributing to the minor's drug use.

¶ 33 The juvenile court has broad authority to act in the best interest of the child and to fashion remedies that "aid in the prevention of future unlawful conduct and the development of responsible citizenship." Utah Code Ann. § 78A–6–102(5)(b) (2008). The focus of the juvenile court system, however, is on modifying the behavior of the juvenile. Because the focus is on the behavior of the juvenile, the behavior of parents of juveniles involved in the system is of secondary importance.

¶ 34 Attempting to ensure that parents of delinquent juveniles are drug free also should not be confused with the goal of protecting children where there is a concern for their welfare. In the presence of a welfare concern related to the parent's drug use, the government's interest is decidedly increased, as are the possible consequences of waiting until there is probable cause for a search. By contrast, where the concern of the proceeding is the child's delinquent behavior, there is less necessity to obtain information about the parent's behavior. There is time to obtain information that will provide probable cause for a search of the parent.

### C. Weighing of Interests

¶ 35 In the cases where searches on less than probable cause were found to be reasonable, although there was an important government interest, the description of the privacy interest as reduced had a significant impact on the balancing. Absent a reduced privacy interest of some kind, it would be nearly impossible for even the most compelling government interest to override an individual's privacy interest unless the burden on the government interest was particularly onerous. Were it otherwise, the government's stated compelling interest in combating drug abuse could be grounds for random drug testing of all citizens.

¶ 36 In this case, there is very little to suggest that the parent of a delinquent juvenile has a significantly reduced privacy interest. On the other side of the balancing equation, while it is a commendable goal, the government's interest in ensuring that parents of delinquent juveniles provide good examples to their children is not as compelling as the other goals of the juvenile courts, such as protecting children from abuse and neglect. The interest is also not one that would be placed in jeopardy by a requirement that there must be probable cause for the search. While it could be possible for there to be a government interest in the juvenile court context that is significant enough and would be burdened enough by a probable cause requirement that the government interest would overcome a parent's privacy interest, we do not find that is the case here. Because the burden a probable cause requirement would place on the government's interest does not outweigh the individual privacy interest in this case, we find that where a delinquent child's parent is ordered to be

drug tested, the search must be supported by probable cause.

### D. Probable Cause

 ¶ 37 Probable cause is not a rigid standard. It "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence ... will be found." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Although the standard is flexible, "common rumor or report, suspicion, or even strong reason to suspect [is] not adequate." *Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) (internal quotation marks omitted).

¶ 38 In this case, the juvenile court was presented with the following facts about Mr. Moreno: (1) Mr. Moreno is listed as a "threat to law enforcement" (although the record does not disclose how one is determined to be a threat to law enforcement nor, having found one's way onto the list, what can be done to remove oneself); (2) Mr. Moreno has evaded police; (3) police have been called to Mr. Moreno's home regarding "domestic disturbances"; (4) police have seen iodine stains on the hands of Mr. Moreno's live-in girlfriend, Karen Hardy; (5) Mr. Moreno made trips back and forth from the hills near Parowan with Ms. Hardy; and (6) C.M.'s grandparents believe that Mr. Moreno is an alcoholic and that Ms. Hardy uses drugs. Of all of these facts, only the fact that Mr. Moreno made trips back and forth to the hills with a suspected drug user is directly related to Mr. Moreno's possible involvement with drugs. Even this fact does not have direct bearing on whether Mr. Moreno was *using* drugs. Based on these facts, a person of reasonable prudence would not have reason to believe that evidence of drug use would be found through a drug test of Mr. Moreno. There is simply nothing in the evidence that would suggest that Mr. Moreno took drugs. The evidence regarding Mr. Moreno's girlfriend and the evidence of Mr. Moreno's interactions with the police could raise suspicion that he was using drugs; however, mere suspicion does not create probable cause.

¶ 39 Because a search based on less than probable cause does not meet the Fourth Amendment standard of reasonableness in this case, probable cause was required for the search to be constitutional. Since the search lacked probable cause, it violated Mr. Moreno's Fourth Amendment rights and was therefore not a reasonable condition to impose on him as part of his daughter's delinquency proceeding.

### CONCLUSION

 ¶ 40 We hold that the Fifth District Juvenile Court had subject matter jurisdiction over Mr. Moreno under Utah Code section 78A–6–117. The juvenile court had jurisdiction over the delinquent child and, therefore, jurisdiction to order Mr. Moreno to comply with "reasonable conditions."

 ¶ 41 The context in which subsections 78A–6–117(2)(p)(i) and (t) appear and the public policy underlying the Act lead us to conclude that a condition imposed on a parent in a child delinquency case is reasonable if it is not punitive and there is a nexus between the parent's alleged act, the minor's behavior, and the goal of the order. Even if an order meets these criteria, however, it will be unreasonable if it violates the parent's constitutional rights.

 ¶ 42 We find that ordering the parent of a delinquent juvenile to undergo drug testing absent probable cause to believe that the parent is using drugs conflicts with the parent's established rights under the Fourth Amendment. In this case, no probable cause existed for the drug testing of Mr. Moreno; therefore, we find that the order is not a reasonable condition under subsections 78A–6–117(2)(p)(i) and (t). As a result, we reverse the decision of the juvenile court.

¶ 43 Chief Justice DURHAM and Justice PARRISH concur in Justice NEHRING'S opinion.

DURRANT, Associate Chief Justice, dissenting:

¶ 44 The majority concludes that the drug testing at issue here fails to qualify as a special needs search under the United States

Supreme Court's jurisprudence and therefore must be supported by probable cause. I disagree. In my view, this case fits squarely within that category of special needs cases where probable cause need not be shown. The majority further concludes that the order requiring drug testing is not reasonable as required by Utah Code section 78A–6–117(2)(t) (2008). Again, I disagree. Applying the majority's reasonableness test, I conclude that the testing was reasonable.

## I. THE DRUG TESTING DOES NOT VIOLATE THE FOURTH AMENDMENT BECAUSE THE TESTING IS SUPPORTED BY A SPECIAL NEED AND IS DIVORCED FROM THE STATE'S INTEREST IN LAW ENFORCEMENT

¶ 45 The Fourth Amendment prohibits unreasonable searches.[1] Ordinarily, a search without probable cause is unreasonable and therefore unconstitutional.[2] As the majority notes, however, the Supreme Court has held that there are "exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."[3] Thus, the Court has permitted suspicionless drug testing under a special needs analysis in cases involving "railway employees involved in train accidents, . . . United States Custom Service employees seeking promotion to certain sensitive positions, and . . . high school students participating in interscholastic sports."[4]

¶ 46 The majority distinguishes these cases from the one before us on the ground that the persons subject to testing in these cases had a reduced privacy interest because they were employees in pervasively regulated industries or had taken voluntary actions that reduced their privacy interest. The majority concludes that absent such a reduced privacy interest it "would be nearly impossible for even the most compelling government interest to override an individual's privacy interest."

¶ 47 I disagree. In my view, this interpretation misapplies the balancing test set forth by the Supreme Court in its special needs cases. Under the special needs test, a court weighs "the intrusion on the individual's interest in privacy against the 'special needs' that supported the program."[5] The focus in the analysis should be on the nature of the special need and the extent of the privacy intrusion it occasions, not on whether the privacy interest of the individual subject to the intrusion has already been reduced for some reason independent of the special need.[6]

¶ 48 I believe this point is clearly illustrated by the United States Supreme Court's decision in *Ferguson v. Charleston,* a case in which the Court conducted a special needs analysis of a state hospital's drug testing policy.[7] Although the Court struck down the policy, in doing so the Court distinguished some of its prior special needs cases in a way that I believe strongly supports the conclusion that the drug testing now before us is constitutional.

¶ 49 In *Ferguson,* a state hospital had the policy of testing pregnant mothers for cocaine and turning positive test results over to the police.[8] In comparing *Ferguson* to previous special needs cases, the Court noted that

> [T]he invasion of privacy in this case is far more substantial than in those cases. In

1. *See Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

2. *Id.*

3. *Ferguson v. City of Charleston,* 532 U.S. 67, 76 n. 7, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (citation and internal quotation marks omitted).

4. *Id.* at 77, 121 S.Ct. 1281 (citing *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Nat'l Treasury Employees Union,* 489 U.S. 656, 109 S.Ct. 1384; *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)).

5. *Id.* at 78, 121 S.Ct. 1281.

6. *Id.* (analyzing and balancing a state hospital's need to drug-test new mothers with the mothers' reasonable expectation that the test results would not be shared with non-medical personnel).

7. 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205.

8. *Id.* at 79–82, 121 S.Ct. 1281.

the previous four cases, there was no misunderstanding about the purpose of the test or the potential use of the test results, and there were protections against the dissemination of the results to third parties.[9]

Most importantly, the Court stated that

The critical difference between those four drug-testing cases and this one, however, lies in the nature of the "special need" asserted as justification for the warrantless searches. In each of those earlier cases, the "special need" that was advanced as a justification for the absence of a warrant or individualized suspicion was one divorced from the State's general interest in law enforcement.[10]

¶ 50 The special need advanced in the case now before us—the promotion and protection of the child's best interest by ensuring that she live in a drug free home—is one divorced from the State's interest in law enforcement. A drug test for the purpose of protecting this child is a far less substantial intrusion on the father's right of privacy than a test for the purpose of his criminal prosecution would be. I would conclude that the special need supporting the test outweighs the privacy intrusion it would require. Accordingly, I would hold the juvenile court's order constitutional.

## II. THE DRUG TESTING MEETS THE REASONABLENESS REQUIREMENT OF UTAH CODE SECTION 78A–6–117(2)(t) BECAUSE ITS PURPOSE IS TO REFORM THE MINOR, NOT PUNISH THE PARENT, AND THERE IS A NEXUS BETWEEN THE PARENT'S POSSIBLE DRUG USE AND THE CHILD'S DRUG USE

¶ 51 I would further hold that the drug testing order is reasonable, pursuant to Utah Code section 78A–6–117(2)(t) (2008), which provides that "[t]he court may make any other reasonable orders for the best interest of the minor or as required for the protection of the public, except that a child may not be committed to jail or prison."

¶ 52 This statutory requirement that the order be reasonable is not necessarily satisfied by a finding that an order is reasonable under the Fourth Amendment. Rather, the Utah statute, which applies to all conditions that the juvenile court may order relating to delinquent children, not just search or seizure orders, imposes its own requirements as to reasonableness. Therefore, a separate analysis is required to determine if a constitutional search order is also reasonable under section 78A–6–117(2)(t). The majority has articulated a test under which courts should conduct that analysis. Applying the majority's test, I conclude that the order was reasonable.

¶ 53 The majority states that to be reasonable, an order (1) must "have behavioral reform of the minor as [its] sole motivation"; (2) must not "be aimed at punishing the parent"; and (3) must be part of a "nexus between the actions of the parent that are to be constrained by the court's conditions, the behavior of the minor that led to her adjudication as delinquent, and the order imposed by the court." In this case, the court's order satisfies this test. First, the court sought to prevent C.M. from engaging in further drug activity. Second, the court's order would not criminally punish the father because the results of the drug test would not be available to law enforcement. And third, a nexus is apparent. C.M. was adjudicated delinquent because of her marijuana use and attempted methamphetamine possession. The court suspected her father of drug use because he lived with a known drug user. Further, the police suspected that Mr. Moreno "may be cooking meth in the hills," and also considered Mr. Moreno a "threat." While these suspicions are insufficient to amount to probable cause, they are sufficient to form a nexus between the actions of the parent that the court seeks to constrain and the behavior of the child that led to her adjudication as delinquent. Accordingly, I would hold that the order was reasonable.

¶ 54 Justice WILKINS concurs in Associate Chief Justice DURRANT'S dissenting opinion.

9. *Id.* at 78, 121 S.Ct. 1281.

10. *Id.* at 79, 121 S.Ct. 1281.